UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

INVESTMENT SCIENCE LLC,

                          Plaintiff,

        -against-

VERIZON MEDIA, INC., OATH INC., and
VERIZON COMMUNICATIONS INC.,

                          Defendants.
------------------------------------------------------------x

1:20-cv-8159 (      )

**COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiff Investment Science LLC, by its attorneys Albert PLLC, for its complaint against

the defendants Verizon Media, Inc., Oath Inc., and Verizon Communications Inc., alleges as

follows:

## PARTIES

1.      Plaintiff Investment Science LLC ("Investment Science") is a Delaware limited

liability company, with principal place of business located in Long Beach, New York.

2.      Defendant Verizon Media, Inc. ("Verizon Media") is a Delaware corporation,

with principal place of business located in New York, New York.

3.      Defendant Oath Inc. ("Oath") is a Delaware corporation, with principal place of

business located in New York, New York.

4.      Defendant Verizon Communications Inc. is a Delaware corporation, with

principal place of business located in New York, New York.

5.      Oath Inc. and Verizon Media, Inc. are subsidiaries of Verizon Communications

Inc.  Together, all three of those entities offer the services of the web service known as "Yahoo!"

throughout the world under the collective name "Verizon Media Group".

10698

## NATURE OF THE ACTION

6.      Yahoo Finance Premium is a web-based subscription service that provides Verizon Media Group's paying customers access to what it describes as "actionable data and advanced tools for investors to trade with confidence."  Verizon Media Group describes Yahoo Finance Premium "as a one-stop destination for subscribers, providing all of the tools and information needed to make informed investment decisions and act upon them." Verizon Media Group introduced Yahoo Finance Premium to the public in June 2019 as a for-pay upgrade from its free website at http://finance.yahoo.com.

7.      Yahoo Finance Premium is not the exclusive product of Verizon Media Group's own honest research and development efforts.  Instead, Verizon Media Group stole substantial and valuable elements of Yahoo Finance Premium from Investment Science in December 2017. The extent of the theft was revealed in June 2019, when Verizon Media Group launched the product on a subscription model regularly priced at $49.99 per month, and with an introductory price of $34.99 per month.

8.      The theft of Investment Science's property allowed Verizon Media Group to redirect its own fruitless efforts to develop a premium product, and instead focus its development efforts on the Investment Science product.  This action seeks damages for that theft and an injunction preventing Defendants from continuing their wrongdoing.

## JURISDICTION AND VENUE

9.      This action arises under the laws of the United States, and the court therefore has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836.

10.      This court has supplemental jurisdiction over the subject matter pursuant to 28 U.S.C. § 1367 because the claims based on state law are so related to claims within the court's

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

11.     This court has personal jurisdiction over defendant Verizon Media, Inc. because Verizon Media, Inc. resides in the State of New York, because substantial portions of the transactions at issue occurred within, and were directed to, the State of New York, and because the tortious acts committed by the defendant were intended to cause and did in fact cause harm in the State of New York.

12.     This court has personal jurisdiction over defendant Oath Inc. because Oath Inc. resides in the State of New York, because substantial portions of the transactions at issue occurred within, and were directed to, the State of New York, and because the tortious acts committed by the defendant were intended to cause and did in fact cause harm in the State of New York.

13.     This court has personal jurisdiction over defendant Verizon Communications Inc. because Verizon Communications Inc. resides in the State of New York, because substantial portions of the transactions at issue occurred within, and were directed to, the State of New York, and because the tortious acts committed by the defendant were intended to cause and did in fact cause harm in the State of New York.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because all of the defendants reside in this district.

15.     Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

### FACTS COMMON TO ALL CLAIMS

Identification of the Defendants

16.     Verizon Communications Inc. is a publicly-traded company.  In the nearly three years since that company acquired the principal operating assets and liabilities of Yahoo! Inc., Verizon Communications Inc. has reported to the United States Securities and Exchange Commission the status of its Yahoo operations both as being the operations of incorporated subsidiaries (Oath Inc. and Verizon Media, Inc.), and as unincorporated divisions ("Verizon Media", "Oath", and "Verizon Media Group").

17.     Verizon Communications Inc. announced in December 2018 that "Oath" was to be rebranded as "Verizon Media".  Despite this outward appearance, Oath Inc. and Verizon Media, Inc. continue to exist as active legal entities in Delaware.  For example, certain "AOL" and "Yahoo"-derivative trademarks are owned by Oath Inc., while Verizon Media, Inc. owns a separate portfolio of intellectual property.  Since it is impossible, based upon the defendants' own filings, to discern when Verizon Communications Inc. took particular actions regarding the events at issue on its own through an unincorporated division or through a separate incorporated entity, the three defendants are referred to collectively as "Verizon Media Group", which is the designator that Verizon Communications Inc. uses in its report on Form 10-K for the fiscal year ending December 31, 2019.

Verizon Media Group's Web Portal Business

18.     Yahoo! Inc. (originally named Yahoo Corporation) was formed in 1995; it was a pioneer in the field of internet search engines and web portals.  Despite its initial success, Yahoo! Inc. ultimately lagged as it was eclipsed by more nimble and more innovative competitors.

19.     Verizon Communications Inc. had, by 2015, already embarked upon a strategy of acquiring established web portals to establish its own footprint in Yahoo! Inc.'s industry.  Its first

4

major acquisition was AOL, which itself had been a past industry leader.  At AOL's peak, it acquired Time Warner Inc. in January 2001 for approximately $182 billion.  In 2009, the merged company spun off the core AOL business into a separate subsidiary, and Verizon Communications Inc. acquired that subsidiary for $3.8 billion in June 2015.

20.     In 2016, Verizon Communications Inc. agreed to acquire the primary operating assets and liabilities of Yahoo! Inc. for $4.83 billion in cash and cash equivalents.  After completing the acquisition in July 2017 at a renegotiated reduced price, it then proceeded to combine the AOL business and the Yahoo business under the "Oath" banner within the Oath Inc. subsidiary.

21.     With the acquisition of AOL and Yahoo, Verizon Media Group has become one of the United States' leading providers of search, communications, digital content and advertising to consumers and businesses.  It continues to provide those products and services under many different brands, one of which is Yahoo.

22.     Among Verizon Media Group's Yahoo-branded products and services is Yahoo Finance (http://finance.yahoo.com).  Yahoo Finance is a web portal that provides news, financial data, and tools with which users can screen investment opportunities; its revenue is derived primarily from advertising.  Beginning in June 2019, the Yahoo Finance product offerings expanded to include an optional, subscription-based product called Yahoo Finance Premium.

Investment Science's Pitch to Verizon Media Group

23.     Investment Science is in the business of developing a product that provides scoring metrics to facilitate rapid analysis of financial instruments.  Once the product is fully developed, Investment Science intends to use it to help manage internal investment funds of its own and its affiliates, and to provide wealth management and financial services to others.

24.     In November 2017, one of Investment Science's principals – Michael T. Kelly ("Kelly") – was coming to the end of a consulting engagement and sensed an opportunity for more work through Verizon Media Group.  On November 27, 2017, Kelly reached out to Guillaume Goussault ("Goussault"), a high-level Verizon Media Group employee with whom Kelly had worked at a company called Liquidnet.

25.     Kelly's purpose in reaching out to Goussault was to develop business for Investment Science, either in the form of a consulting arrangement to develop new products and services to be sold under the Yahoo Finance brand or to further exploit (under the Yahoo Finance brand) existing products that Investment Science had already developed.

26.     Kelly told Goussault that he was nearing the end of a current consulting engagement and would soon be looking for new work.  A few days later, on December 1, Goussault invited Kelly to a December 6 meeting at Verizon Media Group's offices.

27.     Goussault and Kelly met on December 6, 2017.  Both participants understood that the information exchanged during that meeting was confidential and proprietary to the respective parties, and was to be used only for the purpose of evaluating a possible transaction between Investment Science and Verizon Media Group.

28.     With that understanding of confidentiality and restricted use, Goussault confirmed to Kelly that Verizon Media Group was indeed seeking to develop new Yahoo Finance products, and he proceeded to describe Verizon Media Group's confidential concept for a product based upon a proprietary data set.  The participants discussed and evaluated the Verizon Media Group

confidential concept that Goussault disclosed.  Kelly in turn explained to Goussault the recent projects that Kelly had been working on.[1]

29.     Goussault told Kelly that he found Investment Science's concepts very interesting and told him that Kelly needed to meet with the head of Yahoo Finance product development, Charles Hartel ("Hartel"), who was Goussault's boss.

30.     Kelly contacted Hartel through LinkedIn on the same day.  Hartel responded to Kelly in less than a half-hour, and invited Kelly to a meeting at the offices of Verizon Media Group.

31.     Kelly, Hartel, and Goussault met at the Verizon Media Group's 770 Broadway office in Manhattan on December 12, 2017.

32.     All participants understood that the information exchanged during that meeting was confidential and proprietary to the respective parties, and was to be used only for the purpose of evaluating a possible transaction between Investment Science and Verizon Media Group.  With that understanding of confidentiality and restricted use, the parties conducted their meeting.

33.     Hartel told Kelly that Verizon Media Group was trying to create a premium Yahoo Finance subscription-based product that would incorporate and analyze more and different data than was available to the general public on the regular Yahoo Finance website. Hartel told Kelly that Verizon Media Group had come up with only one idea: the confidential

---

[1] Since the detailed information exchanged at the meeting constituted trade secrets of both Verizon Media Group and Investment Science, the trade secrets themselves are not described in detail in this pleading, pursuant to the provisions of 18 U.S.C. § 1835.  Once the Court enters such orders as are necessary and appropriate to preserve the confidentiality of the trade secrets at issue in this case, the details may of course be exchanged between the parties during the course of discovery.

and proprietary product that Goussault had described to Kelly on December 6.  Beyond that idea,
Hartel admitted that Verizon Media Group had no model, no mechanism, and no proof of
concept for a premium Yahoo Finance product.

34.     In exchange, Kelly then disclosed Investment Science's confidential and
proprietary information.  Kelly told Hartel and Goussault that Investment Science already had
already developed – over the previous 16 years – a product that did what Verizon Media Group
wanted for Yahoo Finance, and more.  Hartel asked Kelly to present the Investment Science
product and to explain its operation, which Kelly did.  He presented the confidential and
proprietary details of the Investment Science product; the presentation included descriptions of
data sources and methods, algorithms, and analytical concepts.  As proof of concept, he
presented a trading plan that he had already used for actual trading using the Investment Science
product entitled "River Heights Capital Management, LLC – Trading Plan" (the "Trading Plan")
and results of the Trading Plan, including chart patterns, raw financial statements, technical
reports, and daily financial reports.  He handed Hartel a physical copy of the six-page
copyrighted, confidential Trading Plan and showed Hartel and Goussault examples of the daily
report, accounting data, technicals report, chart patterns report, full candlesticks report,
algorithms, data sources, and plans for future product development.

35.     At Hartel's request, Kelly conducted a whiteboard session in which he explained
the operation of the Investment Science product, explained how to conduct the scoring of the
investments, and provided a preview of additional features that Investment Science was already
working on and features that were in the testing phase.

36.     Hartel asked detailed questions about the Investment Science product and took
copious notes of the meeting.

37.     The meeting concluded on a positive note.  Hartel told Kelly that he was interested in the Investment Science product but needed to get funding for it and that he would contact Kelly if he could obtain funding for development of the product.  Kelly never heard from Hartel again.

Investment Science's Trade Secrets

38.     The Investment Science product incorporates over a dozen different data elements that are not present in algorithms that had been created previously, assigns scores to those data elements, and then uses those scores to rank and evaluate publicly-traded stocks.  There was nothing of the kind in the portfolio of Yahoo Finance products and services before Verizon Media Group's representatives met with Kelly; nobody outside of Investment Science had it. Collectively, the information disclosed to Goussault of December 6, 2017, and the information disclosed to Hartel and Goussault on December 12, 2017 constitute the "Investment Science Confidential and Proprietary Information" that are at issue in this action.

39.     The Investment Science Confidential and Proprietary Information is the property of Investment Science.

Verizon Media Group Steals Investment Science's Product

40.     While Investment Science never heard from Verizon Media Group again, it became clear on June 13, 2019 that Verizon Media Group had Investment Science in the forefront of its corporate mind.  That was the date on which Verizon Media Group launched Yahoo Finance Premium.

41.     In introducing Yahoo Finance Premium, the defendants described the product's key features as follows:

**Premium Data and Charting:** Identify new opportunities through short and long term valuation metrics and automated pattern recognition for technical analysis. Plot technical and corporate events on charts with the click of a button.

**Advanced Portfolio Analytics:** Get tools to measure portfolio performance and allocation, manage risk and volatility, and increase returns across multiple linked brokerages.

**Research Reports and Investment Ideas:** Browse, search, and filter through a rich library of research reports, drafted by third-party analysts or identified through algorithms. Discover actionable investment ideas on stocks that are trending or relevant to the companies you follow, updated daily.

**Company Profiles:** Go beyond fundamentals by evaluating key alternative data metrics against sector averages. Users can gain better insight into hiring, innovation and supply chain dependencies, from operational KPIs (sector-specific metrics) to an innovation index (patents, trademarks, FDA).

42.     Yahoo Finance Premium incorporates substantial unique and proprietary elements of the Investment Science Confidential and Proprietary Information that were disclosed in confidence to Hartel in December 2017, including specific metrics, functionality, scoring methodology, and product vision.  Yahoo Finance Premium does not include the troubled confidential concept belonging to Verizon Media Group that the parties discussed on December 6, 2017 and December 12, 2017.

43.     Yahoo Finance Premium is important to the defendants' business strategy not simply because of the revenue it generates for the subscription model.  It is designed to pave the way for the defendants to reduce dependence on an advertising-based business and increase

subscription-based business throughout its catalog of properties.  Verizon Media's CEO K. Guru Gowrappan described the strategy as follows: "The launch of Yahoo Finance Premium is one example of the membership opportunities ahead for us as we focus on creating services that provide value to our consumers and advertisers, including subscription, transactions and commerce that are uniquely authentic to each brand."

44.     Those elements were not free for the defendants to take for their own without compensation, either to incorporate directly or to use as a basis for speeding up their own process of developing Yahoo Finance Premium.  The defendants were not authorized to exploit any of Investment Science's rights in the Investment Science Confidential and Proprietary Information. But they did, and this action has been brought to redress that wrong.

### FIRST CLAIM
(Acquisition of Trade Secrets by Improper Means Under
Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.)

45.     Plaintiff repeats and re-alleges paragraphs 1 to 44 as if set forth fully herein.

46.     Investment Science operates its business in interstate commerce across the United States.  The trade secrets misappropriated by Verizon Media Group are related to, and intended for use in, interstate commerce.

47.     Verizon Media Group improperly acquired the Investment Science Confidential and Proprietary Information, thereby misappropriating Investment Science's trade secrets pursuant to 18 U.S.C. § 1839(5)(A).

48.     Verizon Media Group acquired Investment Science Confidential and Proprietary Information while knowing or having reason to know that the Investment Science Confidential and Proprietary Information were acquired by improper means, namely, through misrepresentation and/or breach of duty to maintain secrecy, by Goussault and/or Hartel.

49.     Verizon Media Group improperly acquired the Investment Science Confidential and Proprietary Information to compete with Investment Science and is in fact doing so utilizing that very same information.

50.     The aforementioned information constitutes "trade secrets" under the Defend Trade Secrets Act, as defined in 18 U.S.C. § 1839(3). The misappropriated information concerned Investment Science's financial, business, scientific, technical, and economic information that includes plans, compilations, formulas, designs, prototypes, methods, techniques, processes, procedures, and programs.

51.     Investment Science has taken reasonable measures to keep such information secret by, among other things, using the information solely internally to Investment Science, performing development activities primarily through the services of principals of Investment Science, requiring persons with access to confidential information to sign appropriate confidentiality agreements, never permitting development contractors to access the entire system, and providing contractors access to only one component of the product at a time, and only to such information as is necessary for the contracted task.  Investment Science's full business plan, list of data sources, full list of product features, and full description of product functionality has never been disclosed outside of Investment Science.

52.     The Investment Science Confidential and Proprietary Information misappropriated by Verizon Media Group includes highly confidential and proprietary information which required substantial resources, time and investment by Investment Science to create and/or develop, and derives independent economic value from not being generally known to, or readily ascertainably by, those who can obtain economic value from use of this information, such as Investment Science's competitors.

53.     Verizon Media Group's misappropriation of Investment Science Confidential and Proprietary Information has caused Investment Science to suffer harm, including but not limited to loss of confidentiality of concept, loss of first-mover advantage, loss of exclusivity, loss of investment, loss of expenses of research and development, loss of licensing revenue, loss of sales revenue, loss of investors, and loss of reputation.  Furthermore, Defendants have altered their business strategies based on the misappropriated trade secrets, thereby gaining new subscribers and increased market share in profitable industries, among other advantages, to the detriment of Investment Science.

54.     Verizon Media Group's actions constitute willful and malicious misappropriation of the Investment Science's trade secrets pursuant to the Defend Trade Secrets Act. Therefore, Investment Science is entitled to exemplary damages under 18 U.S.C. §1836(b)(3)(D) in an amount up to two times the damages awarded under 18 U.S.C. §1836(b)(3)(B).

55.     Investment Science is entitled to full compensatory and consequential damages, including damages pursuant to 18 U.S.C. §1836(b)(3)(B) for actual loss and any unjust enrichment caused by the misappropriation, as well as attorneys' fees, costs, and expenses, and such other relief as the Court deems just and proper.

56.     Accordingly, Investment Science demands judgment against Defendants for compensatory and exemplary damages, prejudgment interest, damages for unjust enrichment, an award of Plaintiff's reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3), and such other relief as the Court deems just and proper.

### SECOND CLAIM
(Unauthorized Disclosure or Use of Trade Secrets Under
Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.)

57.     Plaintiff repeats and re-alleges paragraphs 1 to 44 as if set forth fully herein.

58.     Investment Science operates its business in interstate commerce across the United States. The trade secrets misappropriated by Verizon Media Group are related to, and intended for use in, interstate commerce.

59.     Verizon Media Group improperly disclosed and/or used Investment Science Confidential and Proprietary Information, thereby misappropriating Investment Science's trade secrets pursuant to 18 U.S.C. § 1839(5)(B).

60.     Verizon Media Group disclosed the Investment Science Confidential and Proprietary Information by communicating them among the employees of each of the defendant corporate entities and by communicating them between the separate corporate entities through the mechanism of their employees.

61.     Verizon Media Group used the Investment Science Confidential and Proprietary Information without Investment Science's consent by relying upon the Investment Science Confidential and Proprietary Information in developing the Yahoo Finance Premium product and incorporating the Investment Science Confidential and Proprietary Information into the Yahoo Finance Premium product.

62.     Verizon Media Group knew or had reason to know that the information was derived from or through a person who had used improper means to acquire the Investment Science Confidential and Proprietary Information– through misrepresentation and/or breach of duty to maintain secrecy – and/or under circumstances giving rise to a duty to maintain the secrecy of the Investment Science Confidential and Proprietary Information (*i.e.*, having exchanged the information in a confidential meeting wherein all parties were bound to keep the information exchanged secret).

63.     The aforementioned information constitutes "trade secrets" under the Defend Trade Secrets Act, as defined in 18 U.S.C. § 1839(3). The misappropriated information concerned Investment Science's financial, business, scientific, technical, and economic information that includes plans, compilations, formulas, designs, prototypes, methods, techniques, processes, procedures, and programs.

64.     Investment Science has taken reasonable measures to keep such information secret by, among other things, using the information solely internally to Investment Science, performing development activities primarily through the services of principals of Investment Science, requiring persons with access to confidential information to sign appropriate confidentiality agreements, never permitting development contractors to access the entire system, and providing contractors access to only one component of the product at a time, and only to such information as is necessary for the contracted task. Investment Science's full business plan, list of data sources, full list of product features, and full description of product functionality has never been disclosed outside of Investment Science.

65.     The Investment Science Confidential and Proprietary Information misappropriated by Verizon Media Group includes highly confidential and proprietary information which required substantial resources, time and investment by Investment Science to create and/or develop, and derives independent economic value from not being generally known to, or readily ascertainably by, those who can obtain economic value from use of this information, such as Investment Science's competitors.

66.     Verizon Media Group's misappropriation of the Investment Science Confidential and Proprietary Information has caused Investment Science to suffer harm, including but not limited to loss of confidentiality of concept, loss of first-mover advantage, loss of exclusivity,

loss of investment, loss of expenses of research and development, loss of licensing revenue, loss of sales revenue, loss of investors, and loss of reputation. Furthermore, Defendants have altered their business strategies based on the misappropriated trade secrets, thereby gaining new subscribers and increased market share in profitable industries, among other advantages, to the detriment of Investment Science.

67.   Verizon Media Group's actions constitute willful and malicious misappropriation of Investment Science's trade secrets pursuant to the Defend Trade Secrets Act. Investment Science therefore is entitled to exemplary damages under 18 U.S.C. §1836(b)(3)(D) in an amount up to two times the damages awarded under 18 U.S.C. §1836(b)(3)(B).

68.   Investment Science is entitled to full compensatory and consequential damages, including damages pursuant to 18 U.S.C. §1836(b)(3)(B) for actual loss and any unjust enrichment caused by the misappropriation, as well as attorneys' fees, costs, and expenses, and such other relief as the Court deems just and proper.

69.   Accordingly, Investment Science demands judgment against Defendants for compensatory and exemplary damages, damages for unjust enrichment, prejudgment interest, an award of Plaintiff's reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3), and such other relief as the Court deems just and proper.

### THIRD CLAIM
(Injunctive Relief Under The Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.)

70.   Plaintiff repeats and re-alleges paragraphs 1 to 44 as if set forth fully herein.

71.   Investment Science operates its business in interstate commerce across the United States. The trade secrets misappropriated by Verizon Media Group are related to, and intended for use in, interstate commerce.

72.     Verizon Media Group improperly acquired, disclosed, and/or used Investment Science Confidential and Proprietary Information, thereby misappropriating Investment Science's trade secrets pursuant to 18 U.S.C. § 1839(5).

73.     The aforementioned information constitutes "trade secrets" under the Defend Trade Secrets Act, as defined in 18 U.S.C. § 1839(3). The misappropriated information concerned Investment Science's financial, business, scientific, technical, and economic information that includes plans, compilations, formulas, designs, prototypes, methods, techniques, processes, procedures, and programs.

74.     Investment Science has taken reasonable measures to keep such information secret by, among other things, using the information solely internally to Investment Science, performing development activities primarily through the services of principals of Investment Science, requiring persons with access to confidential information to sign appropriate confidentiality agreements, never permitting development contractors to access the entire system, and providing contractors access to only one component of the product at a time, and only to such information as is necessary for the contracted task.  Investment Science's full business plan, list of data sources, full list of product features, and full description of product functionality has never been disclosed outside of Investment Science.

75.     The Investment Science Confidential and Proprietary Information misappropriated by Verizon Media Group includes highly confidential and proprietary information which required substantial resources, time and investment by Investment Science to create and/or develop, and derives independent economic value from not being generally known to, or readily ascertainably by, those who can obtain economic value from use of this information, such as Investment Science's competitors.

76.     Verizon Media Group's misappropriation of Investment Science Confidential and Proprietary Information has caused Investment Science to suffer harm, including but not limited to loss of confidentiality of concept, loss of first-mover advantage, loss of exclusivity, loss of investment, loss of expenses of research and development, loss of licensing revenue, loss of sales revenue, loss of investors, and loss of reputation.  Furthermore, Defendants have altered their business strategies based on the misappropriated trade secrets, thereby gaining new subscribers and increased market share in profitable industries, among other advantages, to the detriment of Investment Science.

77.     Investment Science will suffer irreparable and imminent harm in the absence of a permanent injunction; Defendant's continued misappropriation of Investment Science Confidential and Proprietary Information will cause Investment Science further harm.  This imminent injury is neither remote nor speculative, because Investment Science has already been harmed in precisely this manner by Defendants' misappropriation and use thereof, and will continue to be irreparably harmed in the absence of a permanent injunction.

78.     Defendants will not suffer harm from the rightful return of Investment Science Confidential and Proprietary Information, and will not be prevented from conducting their ordinary business.  Defendants will merely be prevented from continuing to gain an unfair and unlawful advantage at Investment Science's expense.

79.     The ongoing, continuing and future harm to Investment Science cannot be adequately remedied at law and requires permanent injunctive relief.

80.     The public interest would not be disserved by the issuance of an injunction preventing Defendant from misappropriating Plaintiff's trade secrets.

81.     Accordingly, Investment Science is entitled to an injunction, pursuant to 18 § U.S.C. 1836(b)(3)(A), enjoining Defendants from continuing to use Investment Science's trade secrets, in order to prevent continued actual and threatened misappropriation of Investment Science trade secrets, and requiring Defendants to destroy the Investment Science Confidential and Proprietary Information improperly retained by Defendants and restraining the Defendants from offering, selling, distributing and product or service whose development can be traced, in whole or in part, to Investment Science Confidential and Proprietary Information, pursuant to 18 U.S.C. § 1836(b)(3)(A)(i) and (ii).

### FOURTH CLAIM
(Unfair Competition Under State Law)

82.     Plaintiff repeats and re-alleges paragraphs 1 to 44 as if set forth fully herein.

83.     Upon information and belief, at all times since unlawfully and improperly obtaining the Investment Science Confidential and Proprietary Information, defendants have used that information to develop new products, structuring its own research and development activities with knowledge of and reference to Investment Science Confidential and Proprietary Information, thereby enabling the defendants to reduce their own costs of development, and to render the plaintiff's competitive advantage non-unique.

84.     By reason of the foregoing, the defendants have intentionally, maliciously and willfully unfairly competed, and continue to unfairly compete Investment Science, causing Investment Science damages as prayed below for, among other things, loss of confidentiality of concept, loss of first-mover advantage, loss of exclusivity, loss of investment, loss of expenses of research and development, loss of licensing revenue, loss of sales revenue, loss of investors, and loss of reputation.  Furthermore, Defendants have altered their business strategies based on the

misappropriated trade secrets, thereby gaining new subscribers and increased market share in profitable industries, among other advantages, to the detriment of Investment Science.

85.     Accordingly, Investment Science demands judgment against Defendants for compensatory damages, punitive damages, prejudgment interest, an award of reasonable attorneys' fees and costs.

## FIFTH CLAIM
(Misappropriation of Trade Secrets Under State Law)

86.     Plaintiff repeats and re-alleges paragraphs 1 to 44 as if set forth fully herein.

87.     The Investment Science Confidential and Proprietary Information disclosed to Verizon Media Group concerned Investment Science's financial, business, scientific, technical, and economic information that includes plans, compilations, formulas, designs, prototypes, methods, techniques, processes, procedures, and programs, is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.

88.     The Investment Science Confidential and Proprietary Information is used in Investment Science's business.

89.     The Investment Science Confidential and Proprietary Information and information disclosed gives Investment Science an advantage over competitors who do not know or use it.

90.     The Investment Science Confidential and Proprietary Information is not known outside of Investment Science's business.  Investment Science has no employees; it is not known to anyone other than the three principals who are members of Investment Science.

91.     Investment Science guards the secrecy of the Investment Science Confidential and Proprietary Information by using the information solely internally to Investment Science, performing development activities primarily through the services of principals of Investment Science, never permitting development contractors to access the entire system, and providing

contractors access to only one component of the product at a time, and only to such information as is necessary for the contracted task. Investment Science's full business plan, list of data sources, full list of product features, and full description of product functionality has never been disclosed outside of Investment Science.

92. The Investment Science Confidential and Proprietary Information is central to the trading strategy of Investment Science. Its use can generate at least two separate streams of revenue: profits from trading for its own account and fees from managing the accounts of others by use of that information. Over the course of 16 years, Investment Science and its principal Michael Kelly have devoted substantial time, money and effort to develop the information. The Investment Science Confidential and Proprietary Information is unique in the industry, and was unavailable anywhere until the Defendants stole it and marketed it.

93. Accordingly, the Investment Science Confidential and Proprietary Information are trade secrets of Investment Science.

94. By taking the information disclosed to Verizon Media Group subject to the understanding that it was to be used only in connection with evaluating a possible transaction between the parties, the defendants used those trade secrets in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.

95. By reason of the foregoing, the defendants have intentionally, maliciously and willfully misappropriated the trade secrets of Investment Science, causing Investment Science damages as prayed below for, loss of confidentiality of concept, loss of first-mover advantage, loss of exclusivity, loss of investment, loss of expenses of research and development, loss of licensing revenue, loss of sales revenue, loss of investors, and loss of reputation. Furthermore, Defendants have altered their business strategies based on the misappropriated trade secrets,

thereby gaining new subscribers and increased market share in profitable industries, among other advantages, to the detriment of Investment Science.

96.     Accordingly, Investment Science demands judgment against Defendants for compensatory damages, punitive damages, prejudgment interest, an award of reasonable attorneys' fees and costs.

## SIXTH CLAIM
(Misappropriation of Ideas Under State Law)

97.     Plaintiff repeats and re-alleges paragraphs 1 to 44 as if set forth fully herein.

98.     Investment Science and Verizon Media Group had a legal relationship with one another by virtue of their agreement to share confidential and proprietary information with one another in the context of evaluating a potential future business transaction between them.

99.     During the course of their meetings on December 6, 2017 and December 12, 2017, Investment Science revealed to Verizon Media Group ideas related to specific metrics, functionality, scoring methodology, and product vision.

100.     The foregoing ideas were both novel and concrete.

101.     Verizon Media Group misappropriated Investment Science's ideas into the Yahoo Finance Premium product.

102.     By reason of the foregoing, the defendants have intentionally, maliciously and willfully misappropriated the ideas of Investment Science, causing Investment Science damages as prayed below for, among other things, loss of confidentiality of concept, loss of first-mover advantage, loss of exclusivity, loss of investment, loss of expenses of research and development, loss of licensing revenue, loss of sales revenue, loss of investors, and loss of reputation. Furthermore, Defendants have altered their business strategies based on the misappropriated

trade secrets, thereby gaining new subscribers and increased market share in profitable industries, among other advantages, to the detriment of Investment Science.

103.     Accordingly, Investment Science demands judgment against Defendants for compensatory damages, punitive damages, prejudgment interest, an award of reasonable attorneys' fees and costs.

**SEVENTH CLAIM**
(Misappropriation of Skills and Expenditures Under State Law)

104.     Plaintiff repeats and re-alleges paragraphs 1 to 44 as if set forth fully herein.

105.     Investment Science employed the labor and skills of its principals, and expended its own resources, in order to create the Investment Science Confidential and Proprietary Information.

106.     Verizon Media Group misappropriated the aforesaid labor, skills, and resources by taking the product of the labor, skill, and resources for its own.  It did so in bad faith, by virtue of its breach of the understanding of the confidential relationship established in the meetings between Kelly, Goussault, and (later) Hartel.

107.     By reason of the foregoing, the defendants have intentionally, maliciously and willfully misappropriated the skills and expenditures of Investment Science, causing Investment Science damages as prayed below for, among other things, loss of confidentiality of concept, loss of first-mover advantage, loss of exclusivity, loss of investment, loss of expenses of research and development, loss of licensing revenue, loss of sales revenue, loss of investors, and loss of reputation.  Furthermore, Defendants have altered their business strategies based on the misappropriated trade secrets, thereby gaining new subscribers and increased market share in profitable industries, among other advantages, to the detriment of Investment Science.

108.    Accordingly, Investment Science demands judgment against Defendants for compensatory damages, punitive damages, prejudgment interest, an award of reasonable attorneys' fees and costs.

## EIGHTH CLAIM
### (Unjust Enrichment Under State Law)

109.    Plaintiff repeats and re-alleges paragraphs 1 to 44 as if set forth fully herein.

110.    As described above, Verizon Media Group has taken unfair advantage of its access to the Investment Science Confidential and Proprietary Information by, among other things, wrongfully disseminating, stealing, and utilizing Investment Science Confidential and Proprietary Information for its own financial gain and to Investment Science's detriment. Specifically, Verizon Media Group has misappropriated and used Investment Science's business, trading methodology, and investment evaluation to generate income to the exclusion of, and ongoing damage to, Investment Science.

111.    It is unconscionable for Verizon Media Group to retain the financial benefits resulting from its wrongful conduct. Verizon Media Group therefore should be required to make full and complete restitution to Investment Science.

112.    Accordingly, under principles of equity and good conscience, Investment Science is entitled to judgment against Defendants in an amount to be determined at trial, plus all interest and costs as allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

a)    On its first claim, compensatory and exemplary damages, prejudgment interest, damages for unjust enrichment, an award of Plaintiff's reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3);

24

b)      On its second claim, compensatory and exemplary damages, prejudgment interest, damages for unjust enrichment, an award of Plaintiff's reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3);

c)      On its third claim, a permanent injunction enjoining Defendants from continuing to use Investment Science's trade secrets, and requiring Defendants to destroy the Investment Science Confidential and Proprietary Information improperly retained by Defendants and restraining the Defendants from offering, selling, distributing and product or service whose development can be traced, in whole or in part, to Investment Science Confidential and Proprietary Information, together with an award of Plaintiff's reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3);

d)      On its fourth claim, compensatory damages, punitive damages, prejudgment interest, an award of reasonable attorneys' fees and costs;

e)      On its fifth claim, compensatory damages, punitive damages, prejudgment interest, an award of reasonable attorneys' fees and costs;

f)      On its sixth claim, compensatory damages, punitive damages, prejudgment interest, an award of reasonable attorneys' fees and costs;

g)      On its seventh claim, compensatory damages, punitive damages, prejudgment interest, an award of reasonable attorneys' fees and costs;

h)      On its eighth claim, compensatory damages, prejudgment interest, and the costs of the action; and

i)      Such other and further relief as to this Court seems just and proper, including awarding plaintiff its costs and reasonable attorneys' fees.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable by a jury.

Dated:  New York, New York
October 1, 2020

ALBERT PLLC


s/ Craig J. Albert

By:   _____
Craig J. Albert
420 Lexington Avenue, Suite 1402
New York, New York 10170
(646) 790-5840
Craig@AlbertPLLC.com

*Attorneys for Plaintiff*