UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                            :
INVESTMENT SCIENCE LLC,                     :
                                            :
                    Plaintiff,              :     Case No. 1:20-cv-8159 (GBD)
                                            :
    -against-                               :
                                            :     **ORAL ARGUMENT REQUESTED**
OATH HOLDINGS INC.,                         :
                                            :
                    Defendant.              :
                                            :
                                            :
                                            :
-------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND .................................................................................................................... 3

    A.    Mr. Kelly Briefly Meets With Two Oath Employees In December 2017 ................ 3

    B.    Oath Launches The Yahoo Finance Premium Product Over A Year Later .............. 5

LEGAL STANDARD ............................................................................................................. 6

ARGUMENT .......................................................................................................................... 6

I.    PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CAUSES OF
ACTION SHOULD BE DISMISSED (COUNTS ONE, TWO, THREE, AND
FIVE) .......................................................................................................................... 6

    A.    Plaintiff Fails To Plausibly Allege Possession Of A Protectable Trade
Secret ................................................................................................................ 7

    B.    Plaintiff Fails To Plausibly Allege That Oath Misappropriated Its
Purported Trade Secrets .................................................................................. 14

    C.    Plaintiff's DTSA Cause Of Action For An Injunction Independently
Fails ................................................................................................................ 18

II.    PLAINTIFF'S REMAINING STATE LAW CAUSES OF ACTION SHOULD
BE DISMISSED (COUNTS FOUR, SIX, SEVEN, AND EIGHT) ................................... 18

    A.    Plaintiff Fails To State A Claim For Unfair Competition And For
Misappropriation Of Skills And Expenditures (Counts Four and Seven) .............. 18

    B.    Plaintiff Fails To State A Claim For Misappropriation Of Ideas (Count
Six) .................................................................................................................. 21

    C.    Plaintiff Fails To State A Claim For Unjust Enrichment (Count Eight) ................ 23

III.    PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND ................................ 24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Seven, LLC v. Martinez*,
    2021 WL 276654 (S.D.N.Y. Jan. 26, 2021) .............................................................9, 10, 11, 13

*Abrasic 90 Inc. v. Weldcote Metals, Inc.*,
    364 F. Supp. 3d 888 (N.D. Ill. 2019) .........................................................................................10

*Ad Lightning Inc. v. Clean.io, Inc.*,
    2020 WL 4570047 (S.D.N.Y. Aug. 7, 2020).............................................................................16

*Alexander Interactive, Inc., v. Leisure Pro Ltd.*,
    2014 WL 4651942 (S.D.N.Y. Sept. 16, 2014).....................................................................7, 15

*Art and Cook, Inc. v. Haber*,
    416 F. Supp. 3d 191 (E.D.N.Y. 2017) .........................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................1, 2, 6, 12, 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................2, 6, 12, 23

*Berkley Risk Adm'rs. Co.v. Accident Fund Holdings, Inc.*,
    2016 WL 4472943 (D. Minn. Aug. 24, 2016) .........................................................................10

*Broughel v. Battery Conservancy*,
    2009 WL 928280 (S.D.N.Y. Mar. 30, 2009) .....................................................................22, 23

*Charles Ramsey Co. v. Fabtech-NY LLC*,
    2020 WL 352614 (N.D.N.Y. Jan. 21, 2020)..............................................................................7

*Chiste v. Hotels.com L.P.*,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010)........................................................................................18

*Corsello v. Verizon N.Y., Inc.*,
    18 N.Y.3d 777 (2012) ................................................................................................................24

*Cuoco v. Moritsugu*,
    222 F.3d 99 (2d Cir. 2000).........................................................................................................25

*Dardashtian v. Gitman*,
    2017 WL 6398718 (S.D.N.Y. Nov. 28, 2017) ..........................................................................18

*Data Broad. Corp. v. Tele-Comms., Inc.*,
  1992 WL 350624 (S.D.N.Y. Nov. 19, 1992) ........................................................................ 20

*Data Device Corp. v. W.G. Holt, Inc.*,
  2020 WL 7024312 (E.D.N.Y. Nov. 30, 2020) ..................................................................... 19

*Deegan v. Strategic Azimuth LLC*,
  768 F. Supp. 2d 107 (D.D.C. 2011) .................................................................................... 8

*Democratic National Committee v. Russian Federation*,
  392 F. Supp. 3d 410 (S.D.N.Y. 2019) ............................................................................... 11

*Elsevier Inc. v. Dr. Evidence, LLC*,
  2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ...................................................................... 14

*Exceed Holdings LLC v. Chi. Bd. Options Exch. Inc.*,
  2018 WL 4757961 (S.D.N.Y. Sept. 30, 2018) .................................................................. 17

*Ferring B.V. v. Allergan, Inc.*,
  4 F. Supp. 3d 612 (S.D.N.Y. 2014) ............................................................................. 19, 20

*Galvez v. Means*,
  1996 WL 487962 (S.D.N.Y. Aug. 27, 1996) .................................................................... 17

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014) .................................................................................... 24

*Gov. Emps. Ins. v. Nealey*,
  262 F. Supp. 3d 153 (E.D. Pa. 2017) ............................................................................ 8, 10

*Hogan v. DC Comics*,
  48 F. Supp. 2d 298 (S.D.N.Y. 1999) .................................................................................. 22

*Indus. Packaging Supplies, Inc. v. Channell*,
  2018 WL 2560993 (N.D. Ill. June 4, 2018) ...................................................................... 18

*Int'l Creative Mgm't, Inc. v. Abate*,
  2007 WL 950092 (S.D.N.Y. Mar. 28, 2007) .................................................................... 10

*Intrepid Financial Partners, LLC v. Fernandez*,
  2020 WL 7774478 (S.D.N.Y. Dec. 30, 2020) .............................................................. 12, 14

*Kagan v. K-Tel Entm't*,
  172 A.D.2d 375 (N.Y. App. Div. 1991) ...................................................................... 21, 22

*Lawrence v. NYC Med. Prac., P.C.*,
  2019 WL 4194576 (S.D.N.Y. Sept. 3, 2019) ............................................................ 9, 10, 12

iii

*Leibowitz v. Cornell Univ.*,
    445 F.3d 586 (2d Cir. 2006)................................................................22

*Mallgren v. N.Y. State Sup. Ct.*,
    2013 WL 586857 (S.D.N.Y. Feb. 11, 2013).................................................25

*Marietta Corp. v. Fairhurst*,
    301 A.D.2d 734 (N.Y. App. Div. 2003) ...................................................13

*Marraccini v. Bertelsmann Music Grp.*,
    221 A.D.2d 95 (N.Y. App. Div. 1996) .....................................................23

*McGhan v. Ebersol*,
    608 F. Supp. 277 (S.D.N.Y. 1985) .........................................................21

*Mintz v. Mktg. Cohorts, LLC*,
    2019 WL 3337896 (E.D.N.Y. July 25, 2019)..........................................8, 10

*NBTY, Inc. v. Vigilante*,
    2015 WL 7694865 (N.Y. Sup. Ct. Nov. 24, 2015) ....................................17

*Precision Concepts, Inc. v. Bonsanti*,
    172 A.D.2d 737 (N.Y. App. Div. 1991) ....................................................9

*Prod. Res. Grp., L.L.C. v. Oberman*,
    2003 WL 22350939 (S.D.N.Y. Aug. 27, 2003).........................................13

*Prominence Advisors, Inc. v. Dalton*,
    2017 WL 6988661 (N.D. Ill. Dec. 18, 2017).............................................15

*Sara Designs, Inc. v. A Classic Time Watch Co.*,
    234 F. Supp. 3d 548 (S.D.N.Y. 2017).....................................................21

*Schroeder v. Cohen*,
    169 A.D.3d 412 (N.Y. App. Div. 2019) .................................................9, 23

*Schroeder v. Pinterest Inc.*,
    133 A.D.3d 12 (N.Y. App. Div. 2015) ...................................16, 20, 21

*Sears Petrol. & Transp. Corp. v. Archer Daniels Midland Co.*,
    2006 WL 1304699 (N.D.N.Y. May 9, 2006)............................................20

*Silipos, Inc. v. Bickel*,
    2006 WL 2265055 (S.D.N.Y. Aug. 8, 2006).............................................13

*Sit-Up Ltd. v. IAC/InterActiveCorp.*,
    2008 WL 463884 (S.D.N.Y. Feb. 20, 2008)............................................13

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*,
  230 F. Supp. 3d 290 (S.D.N.Y. 2017)................................................................19, 20

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
  726 F. Supp. 2d 291 (S.D.N.Y. 2010)........................................................................24

*Stark Carpet Corp. v. Stark Carpet & Flooring Installations*,
  954 F. Supp. 2d 145 (E.D.N.Y. 2013) .........................................................................4

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*,
  2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016)............................................................7

*Temurian v. Piccolo*,
  2019 WL 1763022 (S.D. Fla. Apr. 22, 2019) ...........................................................10

*Thayil v. Fox Corp.*,
  2012 WL 364034 (S.D.N.Y. Feb. 2, 2012).........................................................17, 25

*Trahan v. Lazar*,
  457 F. Supp. 3d 323 (S.D.N.Y. 2020).......................................................................15

*Uni-Systems, LLC v. U.S. Tennis Ass'n, Inc.*,
  350 F. Supp. 3d 143 (E.D.N.Y. 2018) .......................................................................19

*Universal Processing LLC v. Weile Zhuang*,
  2018 WL 4684115 (S.D.N.Y. Sept. 28, 2018).............................................................8

*Willis v. Home Box Office*,
  57 F. App'x 902 (2d Cir. 2010) ................................................................................21

*Xavian Ins. Co. v. Marsh & McLennan Cos.*,
  2019 WL 1620754 (S.D.N.Y. Apr. 16, 2019).......................................................7, 16

*Yak v. BiggerPockets, L.L.C.*,
  2020 WL 5505351 (S.D.N.Y. Sept. 10, 2020)..........................................................20

*Youssef v. Halcrow, Inc.*,
  2011 WL 5244950 (S.D.N.Y. Nov. 1, 2011)..............................................................21

*Zikakis v. Staubach Retail Servs., Inc.*,
  2005 WL 2347852 (S.D.N.Y. Sept. 26, 2005).....................................................21, 23

*Zirvi v. Flatley*,
  433 F. Supp. 3d 448 (S.D.N.Y. 2020)..................................................................11, 12

**Statutes**

18 U.S.C. § 1836..................................................................................................6, 7

18 U.S.C. § 1839 .............................................................................................................. 7, 11, 15

## PRELIMINARY STATEMENT

In December 2017, Plaintiff's principal, Michael Kelly, contacted Oath Holdings Inc.'s employees about a potential role with the company.  That contact led to two short meetings between Mr. Kelly and two Oath employees.  Oath did not ultimately hire Mr. Kelly or engage him for contract work, and Mr. Kelly purportedly instead focused his attention on developing a finance product through the LLC he had created, Investment Science.  Unable to compete with Oath's successful Yahoo Finance Premium Product, Plaintiff filed this lawsuit nearly three years after Mr. Kelly's December 2017 meetings with Oath to try and claim a piece of Oath's success.

To execute this strategy, Plaintiff has concocted the fanciful claim that Mr. Kelly divulged Plaintiff's top secret information to Oath *without* securing a confidentiality or non-disclosure agreement, and that Oath, part of one of the most sophisticated media and telecommunications conglomerates in the world, misappropriated that information into its Yahoo Finance Premium Product.  The Amended Complaint ("AC") offers no facts to support these conclusory allegations and theories.  When Plaintiff's generic, unsupported, speculative, and conclusory allegations are stripped from the AC, as they must be on this motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), what remains is insufficient to survive Rule 12(b)(6) scrutiny on any of Plaintiff's claims.

***Trade Secret Misappropriation Claims.***  Plaintiff alleges violations of the Defend Trade Secrets Act ("DTSA") and New York's trade secrets common law based on Oath's alleged acquisition, use, and/or disclosure of the "Investment Science Confidential and Proprietary Information," which Plaintiff contends constitutes its trade secrets.  Plaintiff's claims fail out of the gate because Plaintiff has not plausibly alleged possession of a trade secret for at least three reasons.  First, Plaintiff fails to allege that it took reasonable measures to protect the confidentiality of its purported secrets.  Plaintiff did not even enter into a confidentiality agreement with Oath

before allegedly disclosing its purported secrets, which is fatal to its trade secrets claims. Second, apart from a mere recitation of the independent economic value element of a trade secret claim, Plaintiff does not actually allege that its purported trade secrets derive any independent economic value from being kept secret. Third, the documents Plaintiff filed with the AC that purportedly contain its trade secrets are comprised of generally known, publicly available financial metrics that are not, in fact, secret. Each of these deficiencies independently warrant dismissal.

Plaintiff's trade secrets claims also fail because the AC does not plausibly allege misappropriation. As to Plaintiff's claim of improper acquisition, the alleged facts demonstrate that to the extent any "trade secrets" were "acquired" by Oath, they were done so lawfully, by Plaintiff's voluntary disclosure to Oath employees in December 2017. And the AC does not recite any *facts* to support Plaintiff's claim of improper use and disclosure. Instead, Plaintiff asks this Court—based on nothing more than conjecture—to make the inferential leap that because Oath's finance product contains similar categories of financial data to Plaintiff's finance product, Oath is liable for misappropriation. *Twombly* and *Iqbal* require more.

Finally, the law is clear that Plaintiff's stand-alone trade secret misappropriation claim for an injunction should be dismissed because an injunction is a remedy, not a viable cause of action.

***Unfair Competition and Misappropriation of Skills and Expenditures.*** Plaintiff's unfair competition claim cannot survive this motion because it is duplicative of Plaintiff's inadequately pleaded trade secrets claims. Plaintiff's claim for misappropriation of skills and expenditures is in turn defective because misappropriating "skills and expenditures" is an element of—and thus duplicative of—Plaintiff's deficient unfair competition claim. Both claims further fail because the AC does not adequately allege the skills and expenditures purportedly at issue, nor how they were allegedly misappropriated by Oath.

*Misappropriation of Ideas.*  Plaintiff's misappropriation of ideas claim is subject to dismissal because Plaintiff fails to plead the requisite elements of the claim—i.e., a legal relationship between the parties, that the ideas are novel, and misappropriation.

*Unjust Enrichment.*  Plaintiff's failure to plausibly plead "novelty" of the "ideas" at issue also requires dismissal of its unjust enrichment claim—a claim that additionally should be dismissed for the independent reason that it is entirely duplicative of Plaintiff's other tort claims.

The parties spent months meeting and conferring about the deficiencies inherent in Plaintiff's claims, which culminated in this amended pleading that fails to state a single, plausible claim against Oath.  The reality—as the two iterations of Plaintiff's deficient pleadings make clear—is that no facts exist that would enable Plaintiff to make out a misappropriation case.  Oath respectfully submits that this action should be dismissed with prejudice.

## BACKGROUND

Investment Science allegedly is "in the business of developing a product that provides scoring metrics to facilitate rapid analysis of financial instruments."  AC ¶ 23.  Oath offers, among other things, the Yahoo Finance Premium product, a web-based subscription service that gives customers access to data and tools to help them make informed investment decisions.  *Id.* ¶ 4. Plaintiff alleges that in December 2017, one of its principals, Michael Kelly, shared Plaintiff's "confidential and proprietary" information concerning its "product" with two Oath employees who misappropriated that information into the Yahoo Finance Premium Product.  *Id.* ¶¶ 24-35.

### A.    Mr. Kelly Briefly Meets With Two Oath Employees In December 2017

At the end of November 2017, Mr. Kelly contacted an Oath employee, Charles Goussault, whom Mr. Kelly knew from a prior job.  *Id.* ¶ 24.  Plaintiff alleges that Mr. Kelly informed Mr. Goussault that he "was nearing the end of a current consulting engagement and would soon be looking for new work," and that Mr. Goussault invited Mr. Kelly to a December 6, 2017 meeting

at Oath's offices. *Id.* ¶ 26. At that meeting, Mr. Kelly purportedly "explained to Mr. Goussault the recent projects that Mr. Kelly had been working on." *Id.* ¶ 29. Mr. Kelly allegedly did so "[w]ith [the] understanding" that unspecified information shared "during that meeting was confidential and proprietary." *Id.* ¶¶ 27-28. Plaintiff does not allege that any confidentiality or non-disclosure agreement was executed in connection with this meeting (none was).

Mr. Kelly subsequently contacted over LinkedIn Mr. Goussault's boss, Charles Hartel, who invited Mr. Kelly to a December 12, 2017 meeting at Oath's offices with Messrs. Hartel and Goussault. *Id.* ¶¶ 30-31, 34. According to the AC, at the meeting, Mr. Hartel informed Mr. Kelly that Oath "was trying to create a premium Yahoo Finance subscription-based product" that would "analyze more and different data" than "the regular Yahoo Finance website." *Id.* ¶ 36. Mr. Hartel allegedly conveyed to Mr. Kelly that Oath "was being pressured to produce a premium product," and "had no model, no mechanism, and no proof of concept for a premium Yahoo Finance Product." *Id.* In response, Mr. Kelly purportedly felt "confident to disclose Investment Science's confidential and proprietary information," and allegedly shared such information concerning a "product" that Investment Science had "developed [] over the previous 16 years," *id.* ¶¶ 39, 129—even though Investment Science was not formed until 2015, *see* Samplin Decl. Ex. 1.[1]

Plaintiff alleges that at the December 12 meeting, Mr. Kelly presented the "details of the Investment Science product," including a "Trading Plan" document. *Id.* ¶¶ 41, 43. Plaintiff alleges that Mr. Kelly walked Messrs. Goussault and Hartel through the "Trading Plan" while making "suggestions" about information missing from the Yahoo Finance Page at the time that he believed would interest investors—such as ███████████████████████████████████████████████; a company's ████████████████████████████████████████████████

---

[1]  The Court may take judicial notice of records kept by a public agency responsible for corporate registrations. *See Stark Carpet Corp. v. Stark Carpet & Flooring Installations*, 954 F. Supp. 2d 145, 159 (E.D.N.Y. 2013).

██████████████████████████████████████ on the ███████████████████████████

████████████████████████ ; and ████████████████████████████ *Id.* ¶¶ 46-55.

Plaintiff alleges that Mr. Kelly showed documents on his phone, described them on a whiteboard,

and "provided a preview of additional features that Investment Science was already working on

and features that were in the testing phase," *id.* ¶¶ 58-59, "[w]ith [the] understanding" that it "was

confidential and proprietary," *id.* ¶ 35.  Plaintiff does not allege that any confidentiality or non-

disclosure agreement was executed in connection with this December 12 meeting (none was).

**B.     Oath Launches The Yahoo Finance Premium Product Over A Year Later**

Well over a year after the December 2017 meetings, on June 13, 2019, Oath launched its

Yahoo Finance Premium Product.  *Id.* ¶ 73.  Well over another year after the release of the product,

Plaintiff filed this action alleging that the product "incorporates substantial unique and proprietary

elements of the Investment Science Confidential and Proprietary Information"—defined as that

which Mr. Kelly purportedly "disclosed in confidence to Mr. Hartel in December 2017."  *Id.* ¶ 75;

*see id.* ¶ 71 ("[T]he information disclosed to Mr. Hartel and Mr. Goussault on December 12, 2017

constitute the 'Investment Science Confidential and Proprietary Information' . . . at issue.").

Plaintiff alleges in a conclusory fashion that the "Investment Science Confidential and

Proprietary Information" constitutes its "trade secrets."  *Id.* ¶¶ 87, 100, 110, 130.  Plaintiff claims

that Oath unlawfully acquired these "trade secrets" through "misrepresentation and/or breach of

duty to maintain secrecy," *id.* ¶ 85, and "breach of an agreement, confidential relationship or duty,"

*id.* ¶ 131, and that Oath unlawfully used these "trade secrets," by incorporating them into the

Yahoo Finance Premium Product, *id.* ¶¶ 98, 131.  Plaintiff also alleges that Oath misappropriated

ideas behind the Investment Science Confidential and Proprietary Information, which it claims

were "novel and concrete," *id.* ¶ 137, as well as the "labor" and "expenditures" associated with

developing the information, *id.* ¶ 143-44.  Plaintiff claims that the same conduct also constitutes unfair competition and unjust enrichment under New York law.  *Id.* ¶¶ 120-22, 147-49.

## **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal of a complaint that fails to state a claim upon which relief can be granted.  To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  The allegations "must be enough to raise a right to relief above the speculative level" and cannot consist of "conclusory statements" or "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

## **ARGUMENT**

## I.    PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CAUSES OF ACTION SHOULD BE DISMISSED (COUNTS ONE, TWO, THREE, AND FIVE)

Plaintiff asserts four trade secrets causes of action: (1) a cause of action for misappropriation under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.* (the "DTSA") based on alleged improper acquisition (Count One); (2) a cause of action for misappropriation under the DTSA based on alleged improper use or disclosure (Count Two); (3) a cause of action under the DTSA for injunctive relief (Count Three); and (4) a cause of action for misappropriation under New York common law.  To prevail on a claim of misappropriation under either the DTSA or New York common law, a plaintiff must establish (1) that it possesses a "trade secret," i.e., specific information that "derives independent economic value" from being kept secret, and that is subject to "reasonable measures to keep such information secret," and (2) that the defendant

6

"misappropriated" the secret, i.e., acquired, used, or disclosed the secret through improper means. 18 U.S.C. §§ 1836(b)(1), 1839(3), (5); *Alexander Interactive, Inc., v. Leisure Pro Ltd.*, 2014 WL 4651942, at \*4 (S.D.N.Y. Sept. 16, 2014) (elements of New York common law claim for misappropriation).   Counts One, Two, and Five should be dismissed because Plaintiff does not plausibly allege that it possesses any trade secrets, nor that any such secrets were misappropriated by Oath, and Count Three should be dismissed because it is not a recognized cause of action.

### A.    Plaintiff Fails To Plausibly Allege Possession Of A Protectable Trade Secret

Plaintiff's trade secret claims fail out of the gate because Plaintiff has not pleaded that its purported trade secrets are the subject of reasonable efforts to maintain their secrecy, that its purported trade secrets derive independent economic value from being kept secret, or that its purported trade secrets are not generally known.   In short, Plaintiff has not plausibly alleged possession of a trade secret, and therefore its four trade secret causes of action should be dismissed.

### 1.    Plaintiff Fails To Allege Reasonable Measures To Protect Its Purported Trade Secrets

A trade secret plaintiff must show that it "has taken reasonable measures to keep such information secret."   18 U.S.C. § 1839(3)(A); *Xavian Ins. Co. v. Marsh & McLennan Cos.*, 2019 WL 1620754, at \*5 (S.D.N.Y. Apr. 16, 2019) ("[U]nder the common law of New York . . . the courts require that the possessor of a trade secret take reasonable measures to protect its secrecy.") (citation omitted).   "Most courts in this Circuit look to contractual confidentiality agreements or physical security measures when determining whether a party took reasonable measures to keep information secret."   *Charles Ramsey Co. v. Fabtech-NY LLC*, 2020 WL 352614, at \*15 (N.D.N.Y. Jan. 21, 2020); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*, 2016 WL 5338550, at \*6 (S.D.N.Y. Sept. 23, 2016) (reasonable measures alleged where plaintiff made "those who use [the information] subject to confidentiality provisions and limitations," and made the information

"accessible [only] through strictly controlled servers").

Here, Plaintiff does not allege that its purported trade secrets were subject to contractual confidentiality agreements or physical security measures. Plaintiff does not even allege that it entered into a written confidentiality agreement with Oath before sharing its purported secrets in December 2017. It did not. The absence of a non-disclosure agreement is fatal to Plaintiff's DTSA claims. *See, e.g.*, *Mintz v. Mktg. Cohorts, LLC*, 2019 WL 3337896, at *6 (E.D.N.Y. July 25, 2019) (dismissing DTSA claim where plaintiff "did not require defendants to sign a non-disclosure agreement nor any sort of covenant to protect the" alleged trade secret); *Gov. Emps. Ins. v. Nealey*, 262 F. Supp. 3d 153, 171 (E.D. Pa. 2017) (same, where plaintiff "d[id] not allege" a "private agreement[] to limit [defendant's] use of the [alleged secret]"); *see also Deegan v. Strategic Azimuth LLC*, 768 F. Supp. 2d 107, 112 (D.D.C. 2011) (dismissing trade secrets claim where plaintiff "apparently shared th[e] [alleged secret] with defendants without requiring any kind of confidentiality agreement first[,]" and thus "d[id] not allege that he took any reasonable steps to maintain the secrecy" of the alleged secret); *Art and Cook, Inc. v. Haber*, 416 F. Supp. 3d 191, 197-98 (E.D.N.Y. 2017) (denying preliminary injunction as to DTSA claims where defendant had refused to sign a confidentiality agreement for the information at issue); *cf. Universal Processing LLC v. Weile Zhuang*, 2018 WL 4684115, at *3 (S.D.N.Y. Sept. 28, 2018) (recognizing that even "taking steps to protect information through a confidentiality agreement"—which Plaintiff here did not do—is not itself sufficient to "suggest the existence of a trade secret").

Plaintiff's vague allegation that it shared its alleged secrets with Oath pursuant to an "understanding of [the secrets'] confidentiality and restricted use," AC ¶¶ 28, 35, cannot save its trade secrets claims, because Plaintiff's "subjective, self-serving understanding[]" of an "amorphous confidentiality" agreement between the parties does not adequately allege the

existence of one, *Schroeder v. Cohen*, 169 A.D.3d 412, 413-14 (N.Y. App. Div. 2019) (dismissing common law trade secrets claims and rejecting argument that generic allegations as to confidentiality "understandings" can create confidentiality obligations).  Nor can Plaintiff save its trade secrets claims based on its general allegation that it requires "persons with access to confidential information to sign appropriate confidentiality agreements," AC ¶¶ 88, 101, 111, because Plaintiff did not require that of *Oath* in connection with the allegedly misappropriated information at issue in *this* case, *see 24 Seven, LLC v. Martinez*, 2021 WL 276654, at *8 (S.D.N.Y. Jan. 26, 2021) (dismissing DTSA claims where plaintiff did not "make a particularized showing that the precise documents and information at issue" were covered by alleged confidentiality agreements); *Precision Concepts, Inc. v. Bonsanti*, 172 A.D.2d 737, 738 (N.Y. App. Div. 1991) (dismissing New York common law trade secrets claim where "plaintiff did not sufficiently assert that it employed precautionary measures to preserve" the alleged trade secrets).  And Plaintiff's assertion that its "business plan," "data sources," "product features," and "product functionality," have "never been disclosed outside Investment Science," AC ¶¶ 88, 101, 111, is belied by its allegations that this information was disclosed to Oath's principals, *id.* ¶¶ 28, 35, 71.[2]

Further, the documents Plaintiff submits with its AC that purportedly contain the trade secrets Mr. Kelly allegedly shared with Oath *nowhere* indicate that they contain confidential, proprietary, or trade secret information (they do not).  *See* Kelly Aff., Exs. C, E–I.  The absence of any confidentiality designation reinforces the absence of reasonable measures to protect secrecy.  "It takes virtually no effort and little sophistication to include a header on a[] . . . spreadsheet

---

[2] Plaintiff's allegations that it prevents "development contractors" from "access[ing] the entire system" (whatever that system may be), and provides them with "only one component of the product at time" (whatever that means), AC ¶¶ 88 101, 111, do not suffice for reasonable measures.  They are general and vague, there are no allegations connecting them to the specific secrets Oath has been charged with misappropriating, and they certainly do not overcome the absence of a contractual confidentiality agreement.  *Cf. Lawrence v. NYC Med. Prac., P.C.*, 2019 WL 4194576, at *5-6 (S.D.N.Y. Sept. 3, 2019) ("scant facts about what th[e] 'reasonable steps' are"—even where, unlike here, plaintiffs signed confidentiality agreements—could not plead reasonable measures).

identifying a document as 'proprietary' or 'confidential,'" and yet Plaintiff could not even do *that* to protect the confidentiality of its information. *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 902 (N.D. Ill. 2019) (denying preliminary injunction as to DTSA claim where plaintiff had not marked its asserted trade secrets as confidential); *cf. Int'l Creative Mgm't, Inc. v. Abate*, 2007 WL 950092, at *4 (S.D.N.Y. Mar. 28, 2007) (noting that even when a plaintiff *does* label documents "confidential," that alone "does not render th[e] information protectable"); *Berkley Risk Adm'rs. Co. v. Accident Fund Holdings, Inc.*, 2016 WL 4472943, at *3 (D. Minn. Aug. 24, 2016) (same). Plaintiff also does not allege that it took any steps to investigate and protect its purported secrets *after* it learned of the alleged misappropriation in June 2019. AC ¶ 7. The absence of alleged steps taken to investigate and protect further demonstrates Plaintiff's failure—and inability—to plead that it took reasonable measures to protect its purported secrets. *See Nealey*, 262 F. Supp. 3d at 170 (failure to allege reasonable measures where plaintiffs did not "demand[] return of" nor "attempt[] to confer" with defendants about disclosure of the secrets for eight months); *see also Temurian v. Piccolo*, 2019 WL 1763022, at *11 (S.D. Fla. Apr. 22, 2019) ("steps [taken] in securing the alleged trade secret" may be undermined by plaintiff's "subsequent failure to safeguard . . . access to the alleged secret") (citation omitted).

Plaintiff cannot maintain trade secrets claims based on information that it failed to reasonably protect. *24 Seven, LLC*, 2021 WL 276654, at *8; *Mintz*, 2019 WL 3337896, at *6; *Lawrence*, 2019 WL 4194576, at *5-6. Plaintiff's failure to plausibly allege reasonable efforts to maintain the secrecy of its purported secrets therefore warrants dismissal of its trade secrets claims.

> **2.      Plaintiff Fails To Allege That Any Of Its Purported Trade Secrets Have Derived Independent Economic Value**

Plaintiff also fails to adequately allege that any of its purported trade secrets have derived independent economic value from being secret.

To qualify for trade secret protection, information must "derive[] independent economic value . . . from not being generally known to, and not being readily ascertainable . . . by[] another person who can obtain economic value" from the information.  18 U.S.C. § 1839(3)(B); *24 Seven, LLC*, 2021 WL 276654, at *5, 9 (same under New York common law).  "Courts dismiss trade secrets claims . . . when the plaintiffs have not alleged sufficiently how the secrets derive independent economic value from not being generally known."  *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y. 2020).  That is the case here, where Plaintiff alleges nothing more than that "[t]he Investment Confidential and Proprietary Information misappropriated by Oath . . . derives independent economic value from not being generally known . . . or readily [sic] ascertainably."  AC ¶¶ 89, 102, 112.  This conclusory allegation, which simply restates the independent economic value element of a trade secret claim, cannot withstand Rule 12(b)(6) scrutiny.

In *24 Seven, LLC*, for example, the plaintiff made no "allegations as to the economic value" of the purported secrets "vis-à-vis its competitors," other than to "point[] to its expenditures" in developing the alleged trade secrets (*more* than Plaintiff alleges here), which the court found deficient at the pleadings stage.  2021 WL 276654, at *9-10 (finding "information in question" did not "constitute trade secrets under the DTSA" where the plaintiff did not allege how the information "gave it an economic leg up 'over competitors who do not know or use it'").  Likewise, the court in *Democratic National Committee v. Russian Federation* dismissed the plaintiff's trade secret claim under Rule 12(b)(6) where the plaintiff had "not identified anything about the process of developing donor lists or fundraising strategies" (the alleged trade secrets) to show "how their particular value derives from their secrecy."  392 F. Supp. 3d 410, 448 (S.D.N.Y. 2019).  The court in *Intrepid Financial Partners, LLC v. Fernandez* similarly dismissed the plaintiff's trade secret claims under Rule 12(b)(6) based on its failure to plausibly allege independent economic value

where the complaint—just like the AC here—merely made the conclusory allegation that the "[plaintiff's] confidential and proprietary business information is . . . of great value to [the plaintiff], and would give any of its competitors who acquired such information an unfair competitive advantage." 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020); *see also Lawrence*, 2019 WL 4194576, at *5-6 (dismissing DTSA claim where plaintiff failed to allege any facts to support that the information at issue had independent economic value from being kept secret). Plaintiff cannot plead that its "trade secrets" derive independent economic value from being kept secret simply by stating as much. *Twombly*, *Iqbal*, and the law of this Circuit require Plaintiff to do more. Plaintiff's failure to allege the requisite independent economic value of its purported trade secrets thus compels dismissal of its trade secrets claims.

### 3. Plaintiff Fails To Allege That Its Purported Trade Secrets Are Not Generally Known

Plaintiff also fails to allege that its purported trade secrets are, in fact, secrets. Plaintiff claims that the "Investment Science Confidential and Proprietary Information" constitute its trade secrets, AC ¶¶ 87, 100, 110, 130, which it defines as the information purportedly conveyed during the December 2017 meetings between Messrs. Kelly, Goussault, and Hartel, *id.* ¶¶ 70, 75. But the information Plaintiff contends Mr. Kelly disclosed in those meetings—allegedly existing in the "Trading Plan" and other "spreadsheets" filed in connection with the AC (Kelly Aff., Exs. C, E–I)—reflect only *publicly available* information that is *generally known* in the finance industry and therefore is not entitled to trade secret protection. *See Zirvi*, 433 F. Supp. 3d at 465 ("Courts dismiss trade secrets claims when the alleged trade secrets are not, in fact, secret . . . .").

***The Trading Plan.*** The Trading Plan includes standard financial metrics of interest to investors, which Plaintiff alleges were incorporated into the Yahoo Finance Premium Product— specifically, an ███████████████████████████████████ and ██████████

████ AC ¶ 79; Kelly Aff., Ex. C at 1, 3, 4.  The Trading Plan also includes ████████ ██████████████████████████████████ which Plaintiff likewise contends were incorporated into the Yahoo Finance Premium product—specifically, ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ AC ¶ 79.

All of these metrics are generally known in the finance industry.  They reflect publicly available information of the type investors across the industry use to evaluate potential investments.  Courts routinely find that such publicly available financial information does not rise to the level of trade secret.  *See, e.g., Sit-Up Ltd. v. IAC/InterActiveCorp.*, 2008 WL 463884, at *12 (S.D.N.Y. Feb. 20, 2008) (pricing metrics related to online "falling-price auctions," including "sales forecast, profit, and margin information," generally known in industry and not trade secret); *Silipos, Inc. v. Bickel*, 2006 WL 2265055, at *5 (S.D.N.Y. Aug. 8, 2006) ("information about the underlying mechanics of [defendant's] discount pricing structure, such as profit margins," not a trade secret because it was based on "publicly-available prices"); *Prod. Res. Grp., L.L.C. v. Oberman*, 2003 WL 22350939, at *13 (S.D.N.Y. Aug. 27, 2003) (plaintiff's "methodology for setting prices" not a trade secret where "companies in the industry follow[ed] similar methods"); *Marietta Corp. v. Fairhurst*, 301 A.D.2d 734, 738 (N.Y. App. Div. 2003) ("pricing data and market strategies . . . would not constitute trade secrets").  Plaintiff's failure to allege that any purportedly misappropriated information from the Trading Plan "could not be easily acquired by others in the industry" (let alone anyone with Internet access) demonstrates that Plaintiff has not adequately alleged the existence of a trade secret. *24 Seven, LLC*, 2021 WL 276654, at *8.

***Spreadsheets, PowerPoint, and*** ▅▅▅▅ ***Data.***    The same is true for Plaintiff's

spreadsheet which contains examples of ▅▅▅▅▅ as well as Plaintiff's ▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅ and data obtained from the

▅▅▅▅▅▅ Kelly Aff., Exs. E–I.  The ▅▅▅▅ document shows ▅▅▅

▅▅▅▅▅▅ *Id.* ¶ 56 & Ex. F.  The ▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅ of specific stocks.  *Id.* ¶ 59 & Ex. G.  The ▅▅▅▅▅▅

with a column showing ▅▅▅▅▅▅▅▅▅

▅▅▅▅▅ *Id.* ¶ 62 & Ex. H.  The ▅▅▅▅▅ which purportedly sets forth a

method of ▅▅▅▅▅▅ includes metrics such as ▅▅▅▅▅

▅▅▅▅▅▅ *Id.* & Ex. E.  And the ▅▅▅ data is simply ▅▅▅

▅▅▅▅ data taken from ▅▅▅▅▅▅▅▅

▅▅▅▅ *Id.* ¶ 65 & Ex. I.  This is all publicly available information from generally known

sources and therefore cannot constitute trade secrets.  *See supra* at 13-14 (citing cases).[3]

In short, Plaintiff's trade secrets claims should be dismissed because Plaintiff has failed to

plead possession of any cognizable trade secrets.

**B.    Plaintiff Fails To Plausibly Allege That Oath Misappropriated Its Purported Trade Secrets**

Misappropriation under the DTSA requires a plaintiff to show "disclosure or use of a trade

---

[3]  Nowhere in the AC does Plaintiff allege that its trade secret is a compilation or combination of these categories of publicly available information, and therefore Plaintiff cannot survive this motion with some new reference to a compilation or combination trade secret in its opposition brief.  Even if Plaintiff had alleged that its purported trade secret is the particular *compilation* of the aforementioned publicly available information (it did not), and even if Plaintiff had alleged that the *compilation* was not generally known (it did not), the allegations would still be deficient because the AC does not contain any allegations suggesting that such a compilation is "unique."  *See Intrepid Fin. Partners*, 2020 WL 7774478, at *3 ("To the extent a plaintiff seeks trade secret protection for a compilation of otherwise publicly available information, the plaintiff must demonstrate . . . a unique combination, [that] affords a competitive advantage and is a protectable secret.") (citation omitted); *see also Elsevier Inc. v. Dr. Evidence, LLC*, 2018 WL 557906, at *3 (S.D.N.Y. Jan. 23, 2018) (same).

secret" by one who "(i) used improper means to acquire knowledge of the trade secret; or (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret . . . derived from . . . improper means, [was] acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret . . ., or derived from or through a person who owed [such] a duty." 18 U.S.C. § 1839(5)(B). "[I]mproper means" includes "misrepresentation [and] breach or inducement of a breach of a duty to maintain secrecy," and expressly excludes any "lawful means of acquisition." *Id.* § 1839(6)(A), (B). The standard is the same under New York common law: to establish misappropriation, a plaintiff must demonstrate that the defendant "used th[e] trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Alexander Interactive*, 2014 WL 4651942, at *4 (citation omitted).

*Plaintiff's Acquisition Claim.* Plaintiff's first DTSA claim, predicated on Oath's alleged *acquisition* of Plaintiff's purported trade secrets, and Plaintiff's common law trade secrets claim to the extent also based on Plaintiff's alleged acquisition of the same, fail because the AC does not allege that Oath acquired these purported secrets through improper means. To the contrary, even in Plaintiff's recitation of events, Oath *properly* acquired the information when Plaintiff's principal, Mr. Kelly, voluntarily disclosed it to Oath's employees during the December 2017 meetings. AC ¶¶ 27, 35. Such a "lawful means of acquisition" falls outside the scope of the DTSA, 18 U.S.C. § 1839(6)(B), and New York common law, and Plaintiff's DTSA and common law claims based on improper acquisition therefore should be dismissed. *See Trahan v. Lazar*, 457 F. Supp. 3d 323, 344 (S.D.N.Y. 2020) (allegation that trade secret "was willingly given into" defendant's possession by plaintiff meant that plaintiff "d[id] not adequately allege that the trade secret[] w[as] acquired by improper means"); *Prominence Advisors, Inc. v. Dalton*, 2017 WL 6988661, at *4 (N.D. Ill. Dec. 18, 2017) (no improper acquisition under the DTSA where plaintiff

15

lawfully came into possession of trade secret); *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 28 (N.Y. App. Div. 2015) (no misappropriation alleged where defendant "voluntarily g[ave] Pinterest the alleged trade secrets, not that Pinterest employed any improper means to acquire them").

     ***Plaintiff's Use and Disclosure Claim.***  Equally deficient are Plaintiff's misappropriation allegations in support of its second DTSA claim, based on Oath's alleged disclosure or use of the alleged trade secrets, and Plaintiff's common law trade secrets claim to the extent also based on Plaintiff's alleged disclosure or use of the same.  Plaintiff's misappropriation theory for Oath's alleged disclosure or use rests entirely on its ███████████████ which purports to ███████████████████████ from ██████████████ that were ████████████████████ AC ¶ 79.  This chart does not plausibly allege misappropriation.  Instead, Plaintiff asks this Court to make the inferential leap—based merely on certain similarities between a generic list of financial features of the Yahoo Finance Premium Product and well-known financial industry metrics Plaintiff claims as its trade secrets— that Oath used Plaintiff's trade secrets to develop its product, and incorporated those secrets into its product.  Plaintiff cannot survive a pleadings challenge based on such rank speculation.  To the extent any similarities exist between the Yahoo Finance Premium Product and Plaintiff's alleged trade secrets, the AC is bereft of *facts*, beyond "circumstantial datapoints" (the December 2017 meetings), that "make its [misappropriation] allegations" *plausible* (i.e., sufficient to withstand this motion) as opposed to merely *possible* (i.e., not sufficient).  *Ad Lightning Inc. v. Clean.io, Inc.*, 2020 WL 4570047, at *3–4 (S.D.N.Y. Aug. 7, 2020) (misappropriation based on disclosure or use inadequately pleaded due to the absence of facts establishing a "concrete link" between "circumstantial datapoints" relied upon to allege misappropriation); *Xavian Ins.*, 2019 WL 1620754, at *6 (same, where plaintiff did not plead "non-conclusory factual allegations" that could

"support a plausible inference" that defendants in fact used or disclosed the alleged trade secrets); *NBTY, Inc. v. Vigilante*, 2015 WL 7694865, at *4 (N.Y. Sup. Ct. Nov. 24, 2015) (same, due to plaintiff's "[v]ague statements that fail to articulate specific acts of misappropriation"). Plaintiff has failed to provide "any elaboration or explanation that would permit the Court to reasonably infer" that any alleged "similarities" between the Yahoo Finance Premium Product and Plaintiff's purported trade secrets was the result of misappropriation by Oath. *Exceed Holdings LLC v. Chi. Bd. Options Exch. Inc.*, 2018 WL 4757961, at *6 (S.D.N.Y. Sept. 30, 2018) (dismissing DTSA claim where plaintiff pleaded only "conclusory allegations and conjecture" to support claim that defendant misappropriated plaintiff's proprietary information exchanged pursuant to an NDA in launching a new product).[4]

Even if Plaintiff plausibly alleged that Oath's Yahoo Finance Premium Product used or disclosed the purported trade secrets (it did not), Plaintiff still could not survive this motion because it does not adequately allege that this use or disclosure occurred through the requisite improper means. Plaintiff's theory of improper means is based on an alleged breach of an "understanding of [the alleged trade secrets'] confidentiality and restricted use" that gave "rise to a duty to maintain th[eir] secrecy." AC ¶¶ 28, 99. That is a conclusory allegation lacking any "factual content that would allow the Court to draw an inference that . . . there was any duty of trust or confidentiality between [the parties]" to begin with. *Thayil v. Fox Corp.*, 2012 WL 364034, at *5 (S.D.N.Y. Feb. 2, 2012) (no plausible misappropriation where trade secrets were "delivered with an expectation of confidentiality that was agreed to, or understood, by defendants").

Counts One, Two, and Five are thus also subject to dismissal as a result of Plaintiff's failure

---

[4] To the extent Plaintiff attempts to rely on the Affidavit of Andrew Weinbach (Dkt. 30-3) to support its misappropriation allegations, the Affidavit "contains unsupported, hearsay allegations, and bald assertions" that should "not defeat a Rule 12(b)(6) motion." *Galvez v. Means*, 1996 WL 487962, at *1 (S.D.N.Y. Aug. 27, 1996) (citation omitted).

to allege misappropriation by Oath.

### C.    Plaintiff's DTSA Cause Of Action For An Injunction Independently Fails

Plaintiff's supposed "cause of action" for injunctive relief under the DTSA (Count Three) should be summarily dismissed for the independent reason that injunctive relief is a *remedy*, not a viable cause of action. *See Dardashtian v. Gitman*, 2017 WL 6398718, at *9 (S.D.N.Y. Nov. 28, 2017) (dismissing "claim" for injunctive relief, based on alleged DTSA violations, because "injunctive relief is a request for a remedy based on a violation of some other right, not an independent claim"); *Indus. Packaging Supplies, Inc. v. Channell*, 2018 WL 2560993, at *5 (N.D. Ill. June 4, 2018) (dismissing claim for "preliminary injunction" in case asserting DTSA claims because "an injunction is . . . not an independent cause of action"); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010) (dismissing injunction cause of action: "injunctions are remedies, not causes of action").  Moreover, because Plaintiff's two other DTSA claims fail for the reasons explained above, Plaintiff has no remaining claim on which it could seek an injunction pursuant to the DTSA, even as a remedy.  Count Three should be dismissed accordingly.

### II.    PLAINTIFF'S REMAINING STATE LAW CAUSES OF ACTION SHOULD BE DISMISSED (COUNTS FOUR, SIX, SEVEN, AND EIGHT)

### A.    Plaintiff Fails To State A Claim For Unfair Competition And For Misappropriation Of Skills And Expenditures (Counts Four and Seven)

Plaintiff's unfair competition claim (Count Four) fails because it is duplicative of Plaintiff's inadequately pleaded trade secret misappropriation claims, and Plaintiff's claim for misappropriation of skills and expenditures (Count Seven) fails because the claim is a subset of— and thus duplicative of—Plaintiff's deficient unfair competition claim.  Even if the claims were not duplicative, Counts Four and Seven would fail because the facts Plaintiff has alleged in support of both claims do not satisfy its pleading burdens.

New York law recognizes unfair competition claims based on misappropriation where "the

defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 307 (S.D.N.Y. 2017). But "[a]n unfair competition claim can only survive dismissal of a duplicative misappropriation claim if the two rest on different factual predicates." *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 629 (S.D.N.Y. 2014). Courts in this Circuit therefore analyze "[a] claim for unfair competition based on the same allegations as a claim for misappropriation of trade secrets . . . as a single cause of action." *Uni-Systems, LLC v. U.S. Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 179 (E.D.N.Y. 2018).

Here, Plaintiff bases its unfair competition claim on the identical set of facts as its trade secret misappropriation claims. In support of its unfair competition claim, Plaintiff alleges that Oath "altered [its] business strategies *based on the misappropriated trade secrets* . . . to the detriment of [Plaintiff]." AC ¶ 121 (emphasis added). And the purported harm Plaintiff alleges in support of its unfair competition claim—that Oath "improperly obtain[ed]" and "used" the "Investment Science Confidential and Proprietary Information" to "render the plaintiff's competitive advantage non-unique"—is based on Oath having allegedly misappropriated (i.e., "improperly obtain[ed]" and "used") Plaintiff's purported trade secrets (i.e., the "Investment Science Confidential and Proprietary Information."). *Id.* ¶ 120. Because the grounds for Plaintiff's unfair competition and trade secret misappropriation claims are indistinguishable, the unfair competition claim is duplicative and should be dismissed. *See, e.g.*, *Data Device Corp. v. W.G. Holt, Inc.*, 2020 WL 7024312, at *6 (E.D.N.Y. Nov. 30, 2020) (dismissing unfair competition claim as duplicative of misappropriation of trade secrets claim where unfair competition was "based on . . . allegation" that defendant "misappropriated . . . valuable, proprietary information");

*Yak v. BiggerPockets, L.L.C.*, 2020 WL 5505351, at *9 (S.D.N.Y. Sept. 10, 2020) (same), *appeal filed*, No. 20-3498 (2d Cir. Oct. 9, 2020).

Plaintiff's misappropriation of expenditures claim fails for a similar reason. A claim for misappropriation of expenditures is substantively the same as a claim for unfair competition—the former is merely a "subset" of the latter. *Pinterest*, 133 A.D.3d at 30 (claim for "misappropriation of skills and expenditures . . . is a subset of New York's unfair competition law"). The very "essence of an unfair competition claim is that one may not misappropriate the results of the labor, skill, and expenditures of another[.]" *Sears Petrol. & Transp. Corp. v. Archer Daniels Midland Co.*, 2006 WL 1304699, at *5 (N.D.N.Y. May 9, 2006). That is why a plaintiff must allege that the defendant "misappropriated the fruit of plaintiff's labors and expenditures" to state a claim for unfair competition. *House of Moxie*, 230 F. Supp. 3d at 307. Count Seven is thus duplicative of Count Four—as well as of Plaintiff's trade secrets claims—and should be dismissed accordingly.

Counts Four and Seven fail for the independent reason that Plaintiff has not plausibly alleged the misappropriation of skills and expenditures requisite to either claim. *See Sears*, 2006 WL 1304699, at *5. The "skills and expenditures" purportedly misappropriated are those that allegedly created the "Investment Science Confidential and Proprietary Information." AC ¶ 142. The AC does not identify these "skills and expenditures" at all, let alone with particularity. Plaintiff's unsubstantiated accusations that Oath misappropriated its undefined "skills and expenditures" does not a state a claim for unfair competition or misappropriation. *See, e.g.*, *Data Broad. Corp. v. Tele-Comms., Inc.*, 1992 WL 350624, at *3 n.4 (S.D.N.Y. Nov. 19, 1992) (unfair competition claim subject to dismissal where plaintiff "failed to allege any facts demonstrating . . . misappropriation of any . . . labor or skills"); *Ferring*, 4 F. Supp. 3d at 630 (same).

Counts Four and Seven also fail because Plaintiff has not plausibly alleged that any

purported misappropriation was done with the requisite bad faith, i.e., "by a showing of fraud, deception, or an abuse of a fiduciary or confidential relationship." *Pinterest*, 133 A.D.3d at 30. Plaintiff's claim of "bad faith," rests on the conclusory assertion that a "confidential relationship" was "established in the meetings between Mr. Kelly, Mr. Goussault, and (later) Mr. Hartel," which Oath purportedly breached by misappropriating Plaintiff's unspecified "labor, skill, and resources." AC ¶ 143. Plaintiff's failure to allege any *facts* supporting the existence of any such confidential relationship between the parties' agents, or any *non-speculative facts* supporting its contention that Oath breached any such relationship by misappropriating information disclosed during the December 2017 meetings, preclude a finding that Plaintiff has adequately pleaded the requisite element of bad faith. *See, e.g.*, *Sara Designs, Inc. v. A Classic Time Watch Co.*, 234 F. Supp. 3d 548, 557 (S.D.N.Y. 2017) (dismissing unfair competition claim for failure to plead bad faith); *Youssef v. Halcrow, Inc.*, 2011 WL 5244950, at *3 (S.D.N.Y. Nov. 1, 2011) (same). Counts Four and Seven should be dismissed accordingly.

### B.    Plaintiff Fails To State A Claim For Misappropriation Of Ideas (Count Six)

"[T]o state a claim under New York law for misappropriation of an idea," the plaintiff must establish that "a legal relationship existed between the parties" and that the allegedly misappropriated idea was "novel." *Zikakis v. Staubach Retail Servs., Inc.*, 2005 WL 2347852, at *3 (S.D.N.Y. Sept. 26, 2005). The test for a legal relationship requires that the parties be fiduciaries to one another, or that a relationship be based on an express, implied-in-fact, or quasi-contract. *McGhan v. Ebersol*, 608 F. Supp. 277, 284 (S.D.N.Y. 1985). The existence of an implied-in-fact contract requires the same elements as an express contract—"consideration, mutual assent . . . [and] capacity." *Willis v. Home Box Office*, 57 F. App'x 902, 904 (2d Cir. 2010) (citation omitted). The existence of a quasi-contract (i.e., a contract implied by law) requires a plaintiff to "demonstrate that services were performed for the defendant resulting in its unjust enrichment."

*Kagan v. K-Tel Entm't*, 172 A.D.2d 375, 376 (N.Y. App. Div. 1991) (emphasis omitted).  "The test for novelty" is "stringent": "the idea must show genuine novelty and invention, and not merely a clever or useful adaptation of existing knowledge."  *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 314 (S.D.N.Y. 1999) (citation omitted).

Plaintiff fails to plead these elements of a misappropriation of ideas claim.  First, the AC does not plead the requisite legal relationship.  Plaintiff does not allege that the parties entered into an express contract of confidentiality.  Rather, Plaintiff alleges that with an "understanding of confidentiality and restricted use," it shared information with Oath's employees during the December 2017 meetings.  AC ¶¶ 28, 35.  These threadbare allegations of an "understanding" do not plead an implied-in-fact contract in the absence of alleged facts demonstrating that Oath assented to a contractual arrangement with Plaintiff.  *See Leibowitz v. Cornell Univ.*, 445 F.3d 586, 593 (2d Cir. 2006) (conclusory allegation of the existence of an implied-in-fact contract does not establish that the parties mutually assented to be bound).  Nor do these threadbare allegations of an "understanding" plead the existence of a quasi-contract, because there is no allegation that Plaintiff actually provided services to Oath or that equity would require that Oath pay Plaintiff as the result of Plaintiff's alleged disclosures—*especially* given Plaintiff's failure to adequately allege that anything was misappropriated in the first place, *see supra* at 15-18.  *See Kagan*, 172 A.D.2d at 376 (no quasi-contract where plaintiff did not allege facts showing that "services were performed for the *defendant* resulting in its unjust enrichment"); *Leibowitz*, 445 F.3d at 591 (same).  In *Broughel v. Battery Conservancy*, this Court rejected a plaintiff's similar allegation of an "implicit and explicit understanding" that the defendant "would not use [plaintiff's] novel and original ideas without contracting with her" based on a lack of factual support.  2009 WL 928280, at *10 (S.D.N.Y. Mar. 30, 2009) (Daniels, J.).  The Court should do the same here.

Second, Plaintiff fails to adequately allege that the "ideas" at issue were concrete or novel. Plaintiff's sole allegation of novelty is the conclusory assertion that its "Confidential and Proprietary Information" is "novel," AC ¶ 137, which is deficient under *Twombly* and *Iqbal*. This conclusory novelty assertion also is flatly contradicted by the publicly available nature of the purportedly misappropriated "ideas," *see supra* at 12-14; *see also Marraccini v. Bertelsmann Music Grp.*, 221 A.D.2d 95, 98 (N.Y. App. Div. 1996) (dismissing misappropriation of ideas claim where plaintiff's marketing strategy was "preexisting in the public domain"). Even if Plaintiff had alleged that its idea was the *compilation* of data categories that are of interest to financial investors (Plaintiff did not make this allegation), that would still be deficient because such an idea is merely "a combination of pre-existing elements [which] is not considered 'novel'" as a matter of law. *Cohen*, 169 A.D.3d at 413 (citation omitted); *see also Zikakis*, 2005 WL 2347852, at *3 (dismissing misappropriation of ideas claim based on plaintiffs' allegedly novel idea to "form[] a real estate investment trust . . . comprised of sale-leaseback transactions within the automotive retailing industry," because it was "simply a variation on a theme that already existed" in the public domain). Simply put, asserting that its alleged "ideas" are "novel" without more cannot satisfy Plaintiff's pleading burden.

Third, for the same reasons that Plaintiff fails to plead misappropriation of any trade secrets, *see supra* at 15-18, Plaintiff fails to plead that Oath misappropriated its alleged ideas— even if those ideas were "novel" enough to support a misappropriation claim. *See, e.g., Broughel*, 2009 WL 928280, at *10 (dismissing misappropriation of ideas claim where plaintiff "failed to allege, in anything other than imprecise and conclusory terms, that defendants actually used any of her novel ideas"). Count Six should be dismissed accordingly.

### C.    Plaintiff Fails To State A Claim For Unjust Enrichment (Count Eight)

Plaintiff's unjust enrichment claim should be dismissed because it is impermissibly

duplicative of Plaintiff's misappropriation claims.  As New York's highest court has made clear: "[U]njust enrichment is not a catchall cause of action to be used when others fail.  It is available only in unusual situations when, though the defendant has not . . . committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 792 (2012).  Here, Plaintiff alleges that Oath took "unfair advantage" of its access to Plaintiff's information by *misappropriating Plaintiff's purported trade secrets and ideas*—i.e., the very basis for its misappropriation claims.  AC ¶ 147.  Thus, "[t]o the extent that these [misappropriation] claims succeed, the unjust enrichment claim is duplicative; if [Plaintiff's] other claims are defective, an unjust enrichment claim cannot remedy the defects." *Corsello*, 967 N.E.2d at 1185; *see also Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483-84 (S.D.N.Y. 2014) (dismissing unjust enrichment claim as duplicative of tort claims, and noting that to permit the plaintiff to plead unjust enrichment in the alternative would "disregard[] . . . substantive state common law").  Consequently, Plaintiff's unjust enrichment claim fails as a matter of law and should be dismissed.

The deficiencies in Plaintiff's misappropriation of ideas claim also provide an independent basis for dismissal of Plaintiff's unjust enrichment claim.  "Where an unjust enrichment claim is premised on a plaintiff's submission of an idea to a defendant, the plaintiff must demonstrate the novelty of the idea in order to recover." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 726 F. Supp. 2d 291, 304 (S.D.N.Y. 2010).  But as explained above, Plaintiff does not plausibly allege novelty, which compels dismissal not only of Plaintiff's misappropriation of ideas claim, but also of Plaintiff's unjust enrichment claim.  Count Eight should be dismissed accordingly.

## III.    PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND

The parties have been discussing the deficiencies inherent in Plaintiff's claims for *months*

since this action was filed on October 1, 2020. *See* Dkts. 16, 20, 25, 27 (stipulations to extend Oath's time to respond to Plaintiff's complaint from October 26, 2020 through January 25, 2021, based in part on the parties' discussions about the deficiencies). Oath also sent Plaintiff two detailed, written letters enumerating the many reasons why each of its causes of action cannot survive Rule 12(b)(6) scrutiny—on November 6, 2020 and December 3, 2020. Plaintiff therefore was on notice of the problems with its claims before it filed the AC on January 29, 2021, and yet Plaintiff has not remedied any of these deficiencies in its amended pleading.

Plaintiff cannot remedy the deficiencies because the "problem[s] with [its] causes of action [are] substantive; better pleading will not cure [them]"—and "[r]epleading would thus be futile." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming denial of leave to replead). For example, better pleading will not cure Plaintiff's failure to protect its purported trade secrets with a contractual confidentiality agreement. Nor will better pleading cure Plaintiff's inability to allege as trade secrets anything other than metrics and concepts that are generally known in the finance industry. The Court should dismiss the AC with prejudice, without leave to amend. *See Mallgren v. N.Y. State Sup. Ct.*, 2013 WL 586857, at *2 (S.D.N.Y. Feb. 11, 2013) (Daniels, J.) (dismissing complaint with prejudice where plaintiff "had an opportunity to amend," and "demonstrated that . . . further amendment would be futile"); *Thayil*, 2012 WL 364034, at *5-7 (same, including with respect to trade secrets claims where plaintiff "would not be able to cure" the fact that it had not alleged possession of a trade secret or breach of a duty of confidentiality).

## **CONCLUSION**

Defendant respectfully requests that the Court dismiss the AC in its entirety, with prejudice.

Dated:  February 16, 2021                    GIBSON, DUNN & CRUTCHER LLP


By:   */s/ Ilissa Samplin*
        Ilissa Samplin
        333 South Grand Avenue
        Los Angeles, CA 90071-3197
        Telephone:  213.229.7605
        Facsimile:  213.229.6605
        ISamplin@gibsondunn.com

        Doran J. Satanove
        200 Park Avenue
        New York, NY  10166-0193
        Telephone:  212.351.4000
        Facsimile:  212.351.4035
        DSatanove@gibsondunn.com

        *Attorneys for Defendant*