USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 1 1 2021

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

INVESTMENT SCIENCE, LLC,

Plaintiff,

-against-

OATH HOLDINGS INC.,

Defendant.

MEMORANDUM DECISION AND ORDER

20 Civ. 8159 (GBD)

GEORGE B. DANIELS, District Judge:

Plaintiff Investment Science, LLC brings this action against Defendant Oath Holdings Inc., alleging violations of the Defend Trade Secrets Act ("DTSA") and various New York state law claims. Oath moves to dismiss the First Amended Complaint (the "FAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Notice of Mot. to Dismiss, ECF No. 38.) Oath's motion to dismiss is GRANTED.

## I. FACTUAL BACKGROUND

Investment Science—a company engaged in the development of a product that provides "scoring metrics" which facilitate "rapid analysis of financial instruments"—alleges that Oath Holdings misappropriated "confidential and proprietary" information concerning its product after one of Investment Science's principals, Michael Kelly, shared product information at two meetings in December 2017. (FAC ¶¶ 23–35.) Oath offers numerous products, but most relevant to this litigation is Yahoo Finance Premium, a web-based subscription service which gives customers access to data and tools to help them make investment decisions. (*Id.* ¶ 4.)

In November 2017, Kelly contacted Oath employee, Charles Goussault, whom Kelly had known from his previous employment. (*Id.* ¶ 24.) Kelly was contacting Goussault because "he was nearing the end of a current consulting agreement engagement and would soon be looking for new work." (*Id.* ¶ 26.) Goussault invited Kelly to meet with him on December 6, 2017 at Oath's offices. (*Id.*) Investment Science alleges that at that meeting, Kelly explained the recent projects he had been working on and that both individuals emphasized the importance of discretion and understood that the information they exchanged was "confidential and proprietary." (*Id.* ¶¶ 27–29.) Notably, absent from the FAC is any allegation that Kelly asked Goussault to enter into a confidentiality agreement prior to sharing what he believed to be confidential information. Goussault allegedly told Kelly that "he found Investment Science's concepts very interesting" and suggested that he contact the head of Yahoo Finance product development, Charles Hartel. (*Id.* ¶ 30.)

On December 12, 2017, Kelly, Goussault, and Hartel met at Oath's offices. (*Id.* ¶ 34.) According to Investment Science, at that meeting Hartel told Kelly that Oath "was trying to create a premium Yahoo Finance subscription-based product" that would "analyze more and different data than "the regular Yahoo Finance website." (*Id.* ¶ 36.) Again, all of the parties "understood the information exchanged during that meeting was confidential and proprietary. (*Id.* ¶ 35.) However, as with the first meeting, no confidentiality agreement was entered into before information was exchanged. Hartel expressed to Kelly that Oath "was being pressured to produce a premium product" but "had no model, no mechanism, and no proof of concept for a Premium Yahoo Finance product." (*Id.* ¶ 36.) Given Hartel's candor, Kelly felt comfortable that he could "disclose Investment Science's confidential and proprietary information." (*Id.* ¶ 38.)

Kelly told Hartel and Goussault that over the last 16 years Investment Science had developed "a product that did what [Oath] wanted for Yahoo Finance, and more."[1] (*Id.* ¶ 39.) Kelly then presented the "confidential and proprietary details of the Investment Science product," including a "Trading Plan" document that was used for "actual trading using the Investment Science product." (*Id.* ¶¶ 41, 43.) At Hartel's request, Kelly explained the details of the Trading Plan and offered a critique (and potential points of improvement) of the Yahoo Finance page as it existed at the time. (*Id.* ¶ 46.) To explain the Trading Plan, Kelly gave Hartel a hardcopy of the plan (which contained no confidentiality designations) and displayed numerous documents from his phone. (*Id.* ¶¶ 43, 59.) Kelly also conducted a "whiteboard session" in which he "explained the operation of the Investment Science product." (*Id.* ¶ 58.) At the conclusion of the meeting, Hartel allegedly told Kelly that he was "interested in the Investment Science product but needed to get funding for it" and would contact Kelly in the future if he could secure the "funding for development of the product." (*Id.* ¶ 68.) Kelly never heard from Hartel again. (*Id.* ¶ 69.)

Over a year later, on June 13, 2019, Oath launched its Yahoo Finance Premium product. (*Id.* ¶ 73.) According to Investment Science, Yahoo Finance Premium "incorporated substantial unique proprietary elements" of Investment Science's confidential information, which was disclosed to Oath at the December 2017 meetings. (*Id.* ¶¶ 73, 75.) Oath argues that Investment Science has failed to plausibly allege that it possesses a trade secret, or that any such secret was misappropriated.

---

[1] The items listed in the Trading Plan, which Plaintiff contends are trade secrets intended to help investors make sound decisions, can fairly be characterized as obvious and common financial metrics used to gauge the overall value and health of a company.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).[2]

A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co., LLP*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

[2] "In deciding a motion to dismiss under Rule 12(b)(6), the court may refer 'to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Fishbein v. Miranda*, 670 F. Supp. 2d 264, 271 (S.D.N.Y. 2009) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

## III. DEFENDANT'S MOTION TO DISMISS IS GRANTED[3]

### A. Plaintiff Fails to State a Claim for Misappropriation Under the Defend Trade Secrets Act

"To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *Medidata Sols., Inc., v. Veeva Sys. Inc.*, 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018). To survive a motion to dismiss, "a party alleging that it owns a trade secret must put forth specific allegations as to the information owned . . . ." *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018). Obviously, a trade-secret plaintiff need not "reveal its secrets in the complaint simply to prove that they exist." *Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 500 (S.D.N.Y. 2020). But in order to satisfy the pleading requirements of Rule 8, a plaintiff must still give a defendant fair notice of the claim by "including, in at least some identifying detail, the trade secret it is alleged to have misappropriated." *Island Intell. Prop., LLC*, 463 F. Supp. 3d at 500.

#### 1. Possession of a Trade Secret

Under the DTSA, a "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" so long as (1) the owner "has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from" its secrecy. 18 U.S.C. § 1839(3).

Oath argues that Investment Science failed to allege the reasonable measures it took to protect its purported trade secrets. (Mem. of Law in Supp. of Def.'s Motion to Dismiss ("Def.'s

[3] Plaintiff has withdrawn his claims for injunctive relief under the DTSA (Count Three), unfair competition (Count Four), misappropriation of skills and expenditures (Count Seven), and unjust enrichment (Count Eight). (Mem. of Law in Opp'n. to Def.'s Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 46, at 18.) Accordingly, those claims are dismissed.

Mot."), ECF No. 41, at 7–10.) The DTSA does not specify what constitutes "reasonable measures" to keep information secret, and the Second Circuit has yet to construe this statutory term. *Xavian Ins. Co. v. Marsh & McLennan Companies, Inc.*, 2019 WL 1620754, at *4 (S.D.N.Y. Apr. 16, 2019). Generally, such measures can include "the use of confidentiality agreements, password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information confidential in an employee handbook, and frequently reminding employees of the need to maintain confidentiality." *Ad Lightning Inc. v. Clean.io, Inc.*, 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020) (internal quotations omitted.)

Here, the FAC does not allege that Investment Science employed reasonable measures to protect its claimed trade secrets. Investment Science concedes that it did not require Oath to sign a confidentiality agreement before sharing the contents of the Trading Plan. (Pl.'s Opp'n at 7.) *Compare Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 450 (2d Cir. 2021) (affirming district court finding that trade-secret plaintiff failed to take reasonable measures where "he did not legally protect [his] property by executing a nondisclosure or licensing agreement"), *with Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (finding that a trade secret holder took "reasonable measures to keep the information secret by making those who use it subject to confidentiality provisions and limitations, and only making it accessible through strictly controlled servers."); *see also Universal Processing LLC v. Zhuang*, 2018 WL 4684115, at *3 (S.D.N.Y. Sept. 28, 2018) (holding that a "confidentiality agreement alone does not suggest existence of a trade secret").

Investment Science argues that an implied agreement of confidentiality existed between Kelly and Oath. (Pl.'s Opp'n at 9–10.) Plaintiff provides no case law, and this Court is unaware of any, to support the proposition that an implied contract of confidentiality constitutes a

"reasonable measure" to protect a trade secret. Indeed, even if such a measure was acceptable the FAC makes no mention of an implied contract between the parties.

Plaintiff next relies on the statements in the FAC that the Trading Plan was divulged to Oath on the "understanding of confidentiality and restricted use," that "[a]ll participants understood the information exchanged during th[e] meeting was confidential and proprietary," and that "Kelly told [Oath] that [the Trading Plan] was intellectual property owned exclusively by Investment Science and could not [be] used without the permission of its principals." (FAC ¶¶ 28,35, 40.) These statements are conclusory. Simply reciting that information is confidential, without alleging any other facts to support the confidential nature of the information or the measures taken to protect such information, is inadequate. *See Art & Cook, Inc. v. Haber*, 2017 WL 4443549, at *3 (E.D.N.Y. Oct. 3, 2017) (holding that speaking "to [d]efendant many times about confidentiality, and . . . ask[ing] [d]efendant to sign an employee handbook and non-disclosure agreement . . . though [d]efendant refused to sign" does not qualify as "'reasonable measures' to protect valuable trade secrets"). Certainly, *Twombly* and *Iqbal* require more.

Similarly, the other measures Investment Science alleges were taken are inadequate. Investment Science argues that because Kelly showed the documents to Oath via access to his work email account (which is password protected) on his phone, that the Trading Plan and related documents were protected by a "cyber-security" measure. (Pl.'s Opp' at 10.) This argument is unpersuasive for two reasons. First, Investment Science alleges that Kelly handed a *hardcopy* of the Trading Plan to Hartel at the December 12, 2017 meeting and that Hartel retained this copy of the Trading Plan for his records. (FAC ¶ 43.) Thus, Investment Science's cyber-security measures were thwarted by their own employee. Second, while other documents were shared only via presentation on Kelly's phone "using the password and login of his work email," this not a

reasonable measure because it fails to differentiate from a protective measure that is used to safeguard any other corporate information. *See Opus Fund Servs. LLC v. Theorem Fund Servs. LLC*, 2018 WL 1156246, at *5 (N.D. Ill. Mar. 5, 2018) (dismissing DTSA claim where plaintiff did "nothing to differentiate its protective measures for the alleged proprietary trade secrets from those imposed on any other corporate information"). A business email account with a login and password—a measure deployed by nearly all businesses today—falls short of measures found to be reasonably protective such as a "strictly controlled server," a password-protected document, or a password-protected folder.[4] *Syntel Sterling Best Shores Mauritius Ltd.*, 2016 WL 5338550, at *6. Thus, Investment Science failed to allege it took reasonable measures to protect its purported trade secrets.

Oath next argues that Investment Science failed to adequately allege that the information contained in the Trading Plan derives any independent economic value from its secrecy. (Def.'s Mot. at 10–12.) Oath is correct. The FAC fails to make any allegations as to the economic value of the Trading Plan. Investment Science offers only a bare recital that it "derives independent economic value from [the information contained in the Trading Plan] not being generally known to, or readily ascertainabl[e] by . . . Investment Science's competitors." (FAC ¶ 89.) This allegation is nothing more than a formulaic recitation of an element of a DTSA claim. *Twombly*, 550 U.S. at 555. Indeed, Investment Science does not allege why the Trading Plan gives it "an economic leg up 'over competitors who do not know or use it.'" *24 Seven, LLC v. Martinez*, 2021

[4]Also unavailing is Investment Science's contention that because the Trading Plan is titled "River Heights Capital Management, LLC" it indicates that the information therein is protectable. (Tr. of Oral Argument, dated May 27, 2021, 35:3-17; FAC ¶ 43.) The FAC contains no allegations explaining why such a title is significant or why it would confer confidential status upon the information contained in the document. What is clear, is that the document is not marked with a confidential or private header. And while such a notation alone would not render the information protectable, it would at least signal to this Court that Plaintiff exercised some amount of diligence. *Int'l Creative Mgmt., Inc. v. Abate*, No. 07 CIV. 1979 PKL, 2007 WL 950092, at *4 (S.D.N.Y. Mar. 28, 2007).

WL 276654, at *9 (S.D.N.Y. Jan. 26, 2021) (quoting Restatement of Torts, § 757). Thus, Investment Science fails to meet the first prong of the DTSA test.

**2. Misappropriation**

Under the DTSA, misappropriation is the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means [, or] disclosure or use of a trade secret of another without express or implied consent by a person who . . . used improper means to acquire knowledge of the trade secret." 18 U.S.C. § 1839(5). Thus, the DTSA provides for "three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Integro USA, Inc. v. Crain*, 2019 WL 6030100, at *2 (S.D.N.Y. Nov. 14, 2019).

Investment Science fails to allege that Oath improperly acquired the Trading Plan or any related documents. In fact, the FAC makes clear that Kelly voluntarily disclosed the purported trade secrets to Oath at the December 2017 meetings. (FAC ¶¶ 27, 35.) Investment Sciences contends that Oath "acquired the information under circumstances that g[a]ve rise to a duty of secrecy." (Pl.'s Opp'n at 14.) But, as noted above, Investment Science fails to provide factual details in the FAC regarding the conclusory allegation that the information at issue was shared with an understanding that the information was confidential. Moreover, even if Oath had a duty of secrecy, Investment Science fails to address the propriety of the acquisition itself. Because Investment Science alleged that it willingly shared the information with Oath it has failed to properly plead misappropriation. *Trahan v. Lazar*, 457 F. Supp. 3d 323, 344 (S.D.N.Y. 2020).

Similarly, the FAC's allegations regarding disclosure and use do not plausibly give rise to misappropriation. Investment Science provides, in chart form, financial features of its Trading Plan that also appear in the Yahoo Finance Premium product. (FAC ¶ 79.) The list of general financial terms pleaded are quintessential "circumstantial datapoints — enough to make its

allegations possible, but not plausible." *Ad Lightning Inc.*, 2020 WL 4570047, at *3 (citing *Iqbal*, 556 U.S. at 678). Accordingly, Investment Science's DTSA claims are dismissed.[5]

### B. Plaintiff's Claim for Misappropriation of Trade Secrets Under New York Law is Dismissed

The requirements for showing a misappropriation of a trade secret are similar under state and federal law. *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016). Under New York law, to succeed on a claim for misappropriation of trade secrets, a plaintiff must show "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999)) (internal quotation marks omitted). For substantially the same reasons that the FAC fails to sufficiently plead a DTSA claim, the FAC also fails to state a claim for misappropriation of trade secrets under New York law.

### C. Plaintiff's Claim for Misappropriation of Ideas Under New York Law is Dismissed

To state a claim under New York law for misappropriation of an idea, a plaintiff must establish: (1) "that a legal relationship existed between the parties" and (2) "that the idea disclosed is novel." *Zikakis v. Staubach Retail Servs., Inc.*, 2005 WL 2347852, at *3 (S.D.N.Y. Sept. 26, 2005). Investment Science fails to establish that a "legal relationship" existed with Oath.[6]

---

[5] To the extent it was not already withdrawn, Count Three of the FAC which requests "Injunctive Relief Under [t]he Defend Trade Secrets Act" is also dismissed. (Pl.'s Opp'n at 18.) Each of Investment Science's DTSA claims has been dismissed; thus, because injunctive relief is a remedy and not an independent cause of action Count III must be dismissed as well. *Dardashtian v. Gitman*, 2017 WL 6398718, at *9 (S.D.N.Y. Nov. 28, 2017).

[6] Because Investment Science fails to establish a legal relationship it is unnecessary to address the novelty of the purported trade secrets.

"The legal relationship between the plaintiff and defendant may be either a fiduciary relationship, or based on an express contract, an implied-in-fact contract, or a quasi-contract." *McGhan v. Ebersol*, 608 F. Supp. 277, 284 (S.D.N.Y. 1985). Investment Science argues that it has adequately pled a legal relationship with Oath in the form of an implied contract of confidentiality. (Pl.'s Opp'n at 16.) An implied-in-fact contract "requires such elements as consideration, mutual assent, legal capacity and legal subject matter." *Nadel v. Play–By–Play Toys & Novelties, Inc.*, 208 F.3d 368, 376 n. 5 (2d Cir. 2000).

Here, Investment Science only makes the conclusory assertion that Kelly shared information with Oath on the "understanding of confidentiality and restricted use." (FAC ¶¶ 28, 35.) The FAC is devoid of any other facts required to allege the existence of an implied contract, including any allegations of mutual assent. *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 593 (2d Cir. 2006) (affirming district court dismissal of claim for breach of implied in-fact contract where plaintiff failed to allege mutual assent.) Investment Science's claim for misappropriation of ideas is therefore dismissed.

## IV. CONCLUSION

Defendant's motion to dismiss the First Amended Complaint, (ECF No. 38), is GRANTED. The Clerk of Court is directed to close the motion accordingly.

Plaintiff may submit, by letter application, a proposed amended complaint if such amendment would not be futile. The letter application must be filed on or before August 31, 2021. If Plaintiff chooses not to amend, the Court will enter final judgment and direct the Clerk of Court to close this case.

Dated: New York, New York
August 11, 2021

SO ORDERED.

George B Daniels

GEORGE B. DANIELS
United States District Judge